## Louis R. Buchoz v. Christiana C. Walker et al.

*Foreclosure sale : Equitable claim to surplus : Fraudulent competition at the sale.* At a foreclosure sale, the party in whose favor the decree was rendered bid off the property, under the influence of competition at the sale, at a sum exceeding the amount of the decree, and the value of the property. He now files a bill, praying to be relieved from the payment of this surplus, on the ground that he was the equitable owner of the mortgaged premises; and that the competition at the sale, by which his bids had been carried up beyond the value of the property, was not in good faith:

*Held :* That the facts set up in the bill did not establish his claim to be the equitable owner of the property; nor does the bill make a case of fraudulent conduct at the sale, to a degree, to justify the relief prayed for.

*Dower : Contract by husband for release.* A contract by a husband that his wife shall release her dower cannot be enforced in equity—. *Weed v. Terry* 2 *Doug.* p. 344.

*Heard October 8. Decided October 19.*

Appeal in Chancery from Washtenaw Circuit.

Louis R. Buchoz, at a foreclosure sale under a decree in his favor, bid off the mortgaged premises at $2,000. The amount due on the decree, beside interest and costs, was $1,119 25, and the value of the property did not exceed this sum. He filed a bill in the Circuit Court for the County of Washtenaw in Chancery, to be relieved from the payment of the surplus of his bid over the amount due on the decree; alleging as the ground for granting the relief he prayed for;—1. That he was the equitable owner of the mortgaged premises; and—2. That he was induced to make his excessive bid by the vexatious and fraudulent conduct of Christiana C. Walker, the principal defendant; and

by being obliged to act hastily at the sale, without opportunity for consultation or reflection.

The bill was demurred to; and on the hearing of the demurrer, was dismissed for want of equity. The complainant brings it into this Court by appeal.

*N. W. Cheever,* for complainant.

*R. E. Frazer,* for defendants.

CAMPBELL J.

Complainant, having as assignee of a mortgage foreclosed it in chancery, became the purchaser at a sum exceeding the amount of the decree. This bill is filed to obtain relief against being compelled to pay over the surplus, and the equity relied upon is based upon the facts set forth at length in the bill. The Court below sustained a demurrer for want of equity, and the whole case, therefore, depends upon the substantial merits appearing on the face of the bill.

The facts, so far as they are material, were as follows: In 1861, complainant, owning some improved property in Ann Arbor, desired to purchase the adjoining lot to extend his improvements. The part immediately next to his premises was owned by Gottlieb Walker, and the remainder by James Conlan. Complainant had made a bargain with Conlan; when Walker, ascertaining it, bought out Conlan and gave him back a mortgage signed by himself and wife covering not only the Conlan premises, but also Walker's own original portion, so as to include the entire lot.

Buchoz then made a verbal bargain with Walker for the purchase of these premises, by the terms of which he was to pay one hundred and ten dollars in money, to assume the payment of the Conlan mortgage and obtain a

release of Walker's personal liability, and to give a mort-
gage to Walker for the balance to make up twelve hun-
dred dollars. The deed was to be made when the arrange-
ment with Conlan was completed, and the mortgage was to
be given as soon as possession was delivered, the interest on
the Conlan mortgage being computed to such delivery, and
the mortgage to Walker to be made for the balance re-
maining of the full purchase price. Walker subsequently
agreed to pay Conlan's expenses for coming to Ann Arbor
to make the releases, and Buchoz advanced twenty dollars
to Conlan at Walker's request for that purpose.

The parties, as soon as the bargain was made, went
together to Mr. Morgan, of Ann Arbor, and Walker em-
ployed him to search the records, and the respective parties
also employed him to draw the deed, and the bond and
mortgage, which he did at once, making the latter for the
supposed balance up to the time when it was proposed to
surrender possession.

Complainant procured a release from Conlan as agreed
upon, and in addition to the twenty dollars advanced to him,
paid Walker ten dollars in cash, and paid Morgan at
Walker's request, five dollars. Complainant executed his
bond and mortgage, and placed it with one hundred dollars
in money in Morgan's hands to be delivered to Walker
when Walker's wife should sign and acknowledge the deed
which Walker executed and acknowledged, and agreed to
have executed by her. Mrs. Walker went to Morgan's office,
and after making full inquiries, said she was satisfied, and
when the deed was produced for her signature, signed or
partially signed it, and then, when Morgan's back was
turned, ran off with it and refused to return it.

Complainant, although using many efforts, never suc-
ceeded in obtaining the deed either from Walker, who died in
1862, or from his widow, and never got possession of the
land. In 1865 he purchased the Conlan mortgage and pro-

ceeded to foreclose it. Upon the sale Mrs. Walker·bid the property off at $2,500, and refused to pay her bid. A new sale was had, and complainant was compelled to bid $2,000, as he says, because a bidder, employed by Mrs. Walker, informed him he should run it up to that amount, and complainant acting hastily and without opportunity for advice, and supposing he was equitably the owner and entitled to any surplus, was thus induced to bid up to that sum, while, as he avers, the property was worth no more than the mortgage, and no *bona fide* bidder would give more.

There are two views in which the complainant's equities are presented by these facts; *first,* as supposed to arise out of the contract, and *second,* as arising from his being the highest actual bidder at less than his last bid.

In the first view, this bill is somewhat in the nature of a claim for specific performance; that is to say, complainant asks to be put in as good a position as if the contract had been performed; and claims to be the equitable owner, if not the legal owner.

The bill does not make him out to be the legal owner. There is one allegation that Walker delivered him the deed; but this is to be considered in connection with the other facts. The dates are very much confused in the bill. But at the time of this alleged delivery the preliminary payment and other conditions had not been complied with, and the deed was at once left with Mr. Morgan with the $100 and the bond and mortgage, none of which were to be delivered until Mrs. Walker should execute on her part. It was part of the original agreement that she should sign. It is quite evident no one supposed the deed would be perfect without her concurrence, and that it was never delivered as a complete instrument and therefore never became operative.

Was then the contract such as to vest in complainant an equitable title? It was not valid under the statute of

frauds. There was no possession taken under it. There was but a trifling payment in money. The release of Walker's personal liability is the most serious thing done, and, as that was irrevocable, it might perhaps have been a sufficient act of part performance to raise an equity, if no one but Walker had been concerned. But a contract by a husband that his wife shall release her dower cannot be enforced in equity. *Weed v. Terry 2 Doug. R. 344.* While it is alleged complainant made efforts to get the deed, it does not appear clearly that he offered to accept it without Mrs. Walker's signature in full performance. And, inasmuch as the facts showed him in the outset, that his claim would not be complied with, he was bound if willing to take Walker's deed alone, to use some diligence in appealing to the Courts for relief against what operated as a fraud upon him. Instead of doing this, he waited four years, or thereabouts, and then, instead of filing a bill for specific performance against the heirs, he purchased the Conlan mortgage, thereby protecting himself against the only serious loss to which he had been exposed, and he proceeded to foreclose it. This proceeding was a waiver of his other claims, even if they had been maintainable.

He cannot, therefore be considered as the equitable owner of the property, and cannot claim the surplus in that capacity.

It remains to be considered whether he is entitled to the surplus as the only *bona fide* bidder up to the amount due on the decree.

If the bill had shown affirmatively that on the second sale there was no one present who would have given more than the amount of the decree, and that the complainant bid that sum, and that the higher bidding, as at the first sale, was a mere trick, instigated by Mrs. Walker, for fraudulent purposes, there seems to be reason for regarding such a showing as creating some equity, although not per-

haps to be enforced in a separate suit. A re-sale would be liable to the same trickery, unless the Commissioner should resort to unusual strictness in requiring instant payment of bids, which would of itself have a tendency to repel bidders. If the complainant had been entitled to possession no great damage could have been done. But while defendants continue in possession they have a strong interest, in appropriating the rents, to use all means to keep off a sale. And as there was no personal remedy for any deficiency, if the property failed to pay the debt, complaniant, who had been entrapped by Walker's fraud into the necessity of taking this security, has a right to favorable consideration, and to protection against any further frauds if that can be secured to him. If he was in fact the only real bidder to the amount of his decree, and the sham bids were designed to defraud him into bidding more than the land was worth, to the advantage and by the procurement of the principal defendant, and there was no one else who would have given any more than the amount due, we incline to consider him equitably entitled to relief. Actual fraud would appear in such a case. But the bill does not go upon this theory, and does not show all these facts. It proceeds upon the claim that complainant really owned the equity of redemption, and the statements of fraudulent bidding and contrivance are inferential and incomplete. The bill is therefore defective on all grounds.

Where the fraud or mistake arises entirely upon the sale and its circumstances, without reference to distinct and original equities, the more obvious remedy would be to apply in the original suit for a re-sale under adequate restrictions, or to pay the surplus money into Court and apply for it, as so much extorted by fraud beyond the highest *bona fide* bid, which would have secured the property unless outbid for fraudulent purposes. This last course would demand a very conclusive showing.

As the complainant seems to have acted in good faith, the bill should be dismissed without prejudice, so that he may, if he sees fit, take such other steps as he may be advised. The case is one to which we have found no parallel reported.

With this modification the decree should be affirmed with costs.

The other Justices concurred.