## SOLOMON *v.* SHEWITZ.

1. VENDOR AND PURCHASER—LAND CONTRACTS—QUIETING TITLE—OPTIONS.

A contract relating to the purchase of land, wherein the owners agreed to sell, and the vendee agreed to buy, property described in the agreement at a stated purchase price, of which $100 was payable at the execution of the contract, $400 when an abstract of title was passed upon, and the balance in semi-annual payments of $100 each, with interest, wherein the vendor also agreed to furnish a quitclaim deed releasing the property from certain re-

strictions outstanding against the same, possession to be given and the deal consummated within thirty days, was not an option but an executory contract for the sale of property.

2. SAME—GOOD FAITH—NOTICE.

Where the evidence tended to show that on the day of making the first payment the vendee was informed of an option given by the owner to another defendant, which, said vendor stated, had elapsed because of defendant's failure to perform, the duty was imposed upon the purchaser to inquire as to the rights of the holder of the alleged option, and charged him with knowledge of such claim as defendant legally had.

3. LAND CONTRACT—ACQUIRING ADVERSE INTEREST.

The vendor of a land contract who, at the time of executing the agreement, had insufficient title under an option or agreement for the purchase of the same, could not, in derogation of his contract to sell, secure legal title of the property in the name of himself and wife; the conveyance will be treated in equity as a conveyance to the vendor alone.

4. SAME—PARTIES—HUSBAND AND WIFE.

Having failed to join in the land contract for the sale of property in which she had an inchoate right of dower, the wife of the vendor, who had no knowledge of the execution of the contract by her husband, could not be compelled to release her dower rights in the lands and was not a proper party to a cross-bill involving its specific performance, although she had joined in the deed of said real property to a third person.

5. SAME—SPECIFIC PERFORMANCE—EQUITY.

Jurisdiction of a court of equity to decree specific performance of a land contract is not exercised as a strict matter of right in the party complainant: the question rests within the sound discretion of the court and the remedy may be granted or rejected according to the equities of each case. Specific performance may be refused although the defense is not such as to warrant rescission of the contract.

Appeal from Wayne; Mandell, J. Submitted January 26, 1915. (Docket No. 62.) Decided April 19, 1915.

Bill by Harry R. Solomon against Jacob Shewitz and others to quiet title to real property. From a decree for complainant, defendant Shewitz appeals. Reversed.

*Fred W. Smith* (*Benjamin & Betzoldt,* of counsel), for complainant.

*Louis Smilansky* and *Harold H. Smilansky,* for defendants Pierson.

STONE, J. The facts in this case are somewhat involved. On January 16, 1913, the title to the premises (consisting of 2½ lots in Hunt & Leggett's subdivision of certain lands in the city of Detroit) was in John W. Leggett. Mr. Leggett had previously given Justice R. Pierson an option to purchase said premises, which option would expire some time in March, 1913. While this option was in force, and on January 16, 1913, the agreement (Exhibit 2) was made by Justice R. Pierson with Jacob Shewitz, as follows:

"Memorandum of agreement, made and entered into this 16th day of January, 1913, by and between Justice R. Pierson and Bessie L. Pierson, his wife, parties of the first part, and Jacob Shewitz, party of the second part, all of the city of Detroit, county of Wayne, and State of Michigan.

"Said parties of the first part agree to sell and said party of the second part agrees to buy the property situated and being in the city of Detroit, county of Wayne, and State of Michigan, to wit: Lots two hundred forty-seven (247), two hundred forty-eight (248), and the east twenty (20) feet of lot two hundred forty-six (246), Hunt & Leggett's subdivision of the south half of the south half of quarter section twenty-four (24), ten thousand acre tract, Hamtramck, being on the northwest corner of Harmon and Oakland avenues, as recorded in Liber ten (10), page 40 of Plats.

"The purchase price to be three thousand and fifty ($3,050.00) dollars, payable as follows: One hundred dollars ($100.00) upon the date hereof, the re-

ceipt of which is hereby confessed and acknowledged
by the parties of the first part; four hundred
($400.00) dollars upon the examination of a Burton
abstract of title, brought down to date, showing good
and merchantable title in said vendors, and upon the
execution of a Union Trust form land contract, the
balance of two thousand five hundred and fifty
($2,550.00) dollars in semi-annual payments of one
hundred ($100.00) dollars or more each, and interest
at the rate of six (6%) per cent. per annum, payable
semi-annually, the full purchase price to be due and
payable on or before three (3) years from the date
of said land contract.

"Said parties of the first part hereby sell the above-
described property free and clear of all and any re-
strictions, and further agree to obtain a quitclaim
deed from John W. Leggett and Grace F. Leggett, his
wife, releasing the property from the following re-
striction, to wit:

" 'That no saloon or store shall be erected on said premises
or that no dwelling house of the value of less than fifteen hun-
dred dollars or less shall be erected fifteen feet from the street
line upon said premises within ninety-nine years from the date
of a certain warranty deed given by the said Leggetts to Charles
H. Green and William W. Snyder, to wit, September 21, 1895.'

"Said party of the second part agrees to pay parts
two, three and four of the Harmon avenue paving tax,
due in the amount not exceeding two hundred and
fifty ($250.00) dollars.

"Said parties of the first part are hereby given the
privilege of mortgaging the above-described premises
in any amount not exceeding fifteen hundred
($1,500.00) dollars. Deal is to be completed and con-
summated within thirty (30) days from date thereof.
Possession to be given immediately upon said con-
summation.

"In witness whereof, the parties hereto have here-
unto set their hands and seals at the city of Detroit
this day and year first above written.

"JUSTICE R. PIERSON.   [L. S.]
"JACOB SHEWITZ.   [L. S.]."

About March 1, 1913, Pierson exercised his option
with Mr. Leggett, paid the amount named in the op-

tion, and took a warranty deed of the premises to himself and wife. On the same day Pierson and wife sold and joined in a deed conveying the property to Harry R. Solomon for $3,375; the latter assuming a $1,500 mortgage which Pierson had given to the bank. The contract between Pierson and Shewitz was placed on record in the office of register of deeds, after the deed from Leggett to Pierson and wife was recorded, but before the deed from Pierson to Solomon was recorded.

On April 24, 1913, Solomon filed a bill of complaint in the Wayne circuit court, in chancery, against defendant Shewitz, claiming to be a *bona fide* purchaser for value by deed from said Pierson and wife of said premises, and that said agreement above set forth was of no force, and to have the said agreement between Pierson and Shewitz declared to be a cloud upon his title, and to have the same declared null and void, and discharged of record.

The defendant Shewitz filed a petition to the end that Justice R. Pierson and Bessie L. Pierson be made parties cross-defendants in said cause, and that process issue to bring them in. The petition was granted, and said parties were brought in. Thereupon said defendant Shewitz answered the bill of complaint, among other things, denying that complainant Solomon was a *bona fide* purchaser for value of said premises, and claiming the benefit of a cross-bill against said Solomon and Justice R. Pierson and Bessie L. Pierson. He set up his said agreement with said Pierson, stated that he paid the $100 therein specified; that early in February, 1913, he informed said Justice R. Pierson that he was ready to carry out his part of the agreement, and instructed his attorney to prepare the necessary land contract and have the same in readiness for its execution, and arranged with said Pierson to close the transaction at a time and place

named; that said Pierson appeared, and said defendant and cross-complainant made a tender to said Pierson of the $400 provided for in the said agreement, but that said Pierson refused to sign said contract, claiming that he desired a short delay to perfect a mortgage before closing said deal, unless cross-complainant desired to pay the entire purchase price in cash; that cross-complainant consented to a delay of a couple of weeks in order that said mortgage might be perfected, but since that time, although frequently requested, said Pierson had at all times refused to carry out his part of said agreement; that on March 3, 1913, cross-complainant, having heard that said Pierson was attempting to sell said property to some one else, made an affidavit confirming the purchase aforesaid, and attached the same to the original agreement, and had the same recorded on the 4th day of March, 1913, at 9:30 a. m. in the office of the register of deeds of said county; that at that time there was no change in the record title which might have affected his interest; that he was informed and believed that said Solomon had knowledge of the contract between cross-complainant and said Pierson, when he purchased said premises, but that said Solomon claimed and considered cross-complainant's interest in said property as an expired option, which was not the fact; that any interest which the said Solomon obtained by virtue of the deed mentioned in his bill of complaint was subject to the rights of this cross-complainant, by virtue of said agreement; that the deed from said John W. Leggett and wife to said Pierson and wife was recorded March 4, 1913, at 9:45 a. m.; that said cross-defendant Bessie L. Pierson had no interest in said property other than her dower interest. The cross-complainant prayed that it might be decreed that the said deed from said Pierson and wife to said Solomon be held void and of no effect as to said cross-

complainant, and that said Solomon be decreed to quitclaim any interest he may have obtained to said property to said Pierson and wife, and, should said Solomon refuse so to do, that said decree might have the effect and force of a quitclaim deed; that it be decreed that said Pierson and wife specifically perform said agreement above set forth, and execute the proper conveyance to said cross-complainant, upon the payment of the balance in full of the purchase price of said property in accordance with the terms and conditions of said agreement; and that it may be decreed that said Pierson and wife deliver to cross-complainant a Burton abstract of title, brought down to date, showing a good and merchantable title in themselves, free and clear of all liens and incumbrances, and that, in default thereof, cross-complainant be allowed a sufficient amount to have such abstract made. There was also a prayer for general relief.

The said complainant Solomon, as cross-defendant, and the said Justice R. Pierson and Bessie L. Pierson, cross-defendants, answered said cross-bill reiterating the allegations of the bill of complaint, and denying that said cross-complainant had any interest in said property, and denying most of the allegations of the cross-bill. The answers admit, however, that defendant Bessie L. Pierson, at the time of answering, had no interest in said property, but claim that on January 26, 1913, she and her said husband became owners in the entirety of said property.

The case, being at issue as to all of the parties, was heard upon testimony taken in open court. Complainant Solomon, among other things, testified as follows on his direct examination:

"I learned of the existence of an alleged claim of the defendant on this property the day I made the first payment of $200, on the 27th day of February. Mr. Pierson, from whom I purchased the property, told me he had given a sort of option to the defend-

ant, whom I had never seen and did not know, but that the option had expired; that he had asked the defendant to live up to this particular option, but he refused to do so, and he was at liberty to dispose of it. * * * Mr. Pierson explained it to me very thoroughly. I bought the property and accepted the deed in good faith, and paid my money for it. * * * I left the deed with the bank on Saturday, the 1st day of March, the day that the mortgage was put on there by Mr. Pierson in the bank, and Mr. Borgman suggested that I leave the deed with him so that he would put the mortgage on record before the deed went on record. I know from examination of the record that Mr. Pierson came into possession of the title the day he transferred it to me."

On cross-examination complainant Solomon testified, in part, as follows:

"About the same time I paid the $200 I heard about the contract between Pierson and Shewitz. I had not departed from the place; it was right there at the time of the transaction. Mr. Pierson brought it up. I do not remember, before or after the paper was signed, but it did not make any difference to me whether it was signed before or afterwards, or whether I had knowledge of the fact that there had been a paper existing before I signed the paper, but relied upon Mr. Pierson's explanation. He stated to me that some man by the name of Shewitz had been given an option on this property, and that the option had expired a week or ten days before, and that Shewitz did not live up to his part of the agreement. * * * I don't know what Shewitz had agreed to pay for the place, but Mr. Pierson had told me approximately the same amount I was to pay. I never made any attempt to see the paper that was signed by Shewitz and Pierson, and I never made any attempt to find out who the man Shewitz was, as I did not think there was any occasion to, either before I paid the $200 or afterwards. I did not care what sort of paper he had. I was willing to rely upon Mr. Pierson's word, irrespective of what papers were signed by the parties. I took Mr. Pierson's word for it. Mr. Pierson said it was an agreement, but that it had ex-

pired. The deal was closed the 1st day of March.
*   *   *

"*Q.* Who paid for the expense of this litigation, you or Mr. Pierson?

"*A.* Why, at the time Mr. Pierson tendered the $100 back to Mr. Shewitz, he refused to take it, and Mr. Pierson wanted to return the money, and he refused to take it, and he said he would turn it over to his attorney. Mr. Pierson had given a warranty deed, and he stated he would be willing to clear up the matter.

"*Q.* The suit was primarily in your name, but Mr. Pierson's proceeding?

"*The Court:* That is the inference I will have to draw.

"*A.* It was not part of my understanding and agreement with Mr. Pierson that I would buy the property with the understanding that Mr. Pierson would clear up the defect, as he claimed. I did not consider that there was any defect, and, as soon as I found out that the contract had been placed on record, I took it up with Mr. Pierson."

Justice R. Pierson was sworn as a witness for complainant. He testified that he did not own the property on January 16, 1913, but had an option on it from Mr. Leggett, the record owner. That witness subsequently acquired title jointly with his wife, and sold it to Mr. Solomon. On cross-examination he testified as follows:

"The option was given to me personally, but I did not take the deed in my own name because Mrs. Pierson was furnishing some money to finance it, and the deed was made jointly. It was just a question of turning the property from Leggett over to Solomon, and it would not have made any difference whether it was in my name alone, as I lost all interest in the property as soon as it was sold to Solomon. I did not have a land contract, though I told Mr. Shewitz I had a contract from Mr. Leggett, and that the deed would have to come from Mr. Leggett in the form of a quitclaim, for he would not make a warranty deed and release the restrictions that were on the property at that time. *   *   * The contract or agreement with

Shewitz had expired before I had an opportunity to sell it for cash. My option was a 90-day option for $1,710 describing the property to be sold for cash, in which I had 90 days to accept, and which privilege I took advantage of. I did not take advantage of the option until Mr. Shewitz's option had expired, but I took advantage of it within the three months. * * *"

This witness further testified that, at the time he made the contract with Mr. Shewitz, the option from Leggett was in his name; that, under the terms of the contract, he was to get a release of the restrictions, but he never made a tender of it to Mr. Shewitz, and never got it until after his (Shewitz's) option had expired; that he got the deed from Mr. Leggett, including the release, and did not make a tender to Mr. Shewitz after his option had expired; that he never submitted a contract and asked him for money; that witness asked Mr. Shewitz if he was ready to carry out the deal, and he said he was not; that witness never gave notice of forfeiture, except by oral statement that the time was up, and he would not go ahead with the deal. Witness denied that Mr. Shewitz told him that he (Shewitz) was ready to close the deal, and he denied that Shewitz ever made him any tender at all.

Jacob Shewitz testified that he saw Mr. Pierson five or six times during the deal, and that he (Shewitz) was always ready to consummate his part of the deal at any time when the restrictions were removed; that he made a tender of the $400 to Mr. Pierson, but thought it was after the 30 days; that Pierson asked for an extension, and said he could not take that much money; that witness should try to raise more money. Shewitz was corroborated by another witness as to the tender of the $400.

The trial court entered a decree in favor of complainant Solomon, holding that the agreement of January 16, 1913, was null and void and a cloud on the

title of complainant, and that Shewitz deliver up the said instrument to be canceled, and that said Solomon was the owner of said land in fee simple by a title perfect as against said Shewitz, and costs were awarded to complainant. Shewitz has appealed.

We have read the entire record with much care, and are of opinion that the above-quoted instrument between Justice R. Pierson and Jacob Shewitz was not an option, as appears to have been claimed by Pierson, but was an executory land contract, valid and of binding force as to the parties thereto. Pierson had the legal right to make such contract. We do not think that time was of the essence of the contract, and we are of opinion that such contract was in force at the time of the purchase of said premises by complainant Solomon.

By a preponderance of the evidence it appears that Shewitz had not forfeited his rights under such contract, but had made the tender claimed by him, and that complainant Solomon had notice of the existence of such contract at the time of his purchase, or at least sufficient notice to put him on inquiry as to Shewitz's rights, and that Solomon was not a *bona fide* purchaser of said premises for value before notice.

Justice R. Pierson could not legally ignore his contract with Shewitz, and take a deed to himself and wife, to the prejudice of Shewitz. He was precluded by his contract from so doing. In so far as he was concerned, the transaction should stand as though the deed had been made by Leggett to him. The right of Mrs. Pierson, then, would be an inchoate dower right in the land. She, never having joined in the contract with her husband to Shewitz, cannot be compelled to release her dower in the land. It is well settled in this State that the wife cannot be compelled to release her dower in lands which her husband has contracted to sell, and she is not a proper party to a

bill by the purchaser for specific performance. *Weed*
v. *Terry*, 2 Doug. (Mich.) 344 (45 Am. Dec. 257) ;
*Richmond* v. *Robinson*, 12 Mich. 193; *Buchoz* v.
*Walker*, 19 Mich. 224; *Phillips* v. *Stauch*, 20 Mich.
369.

The evidence in the instant case fails to show that
Mrs. Pierson had any notice or knowledge of the con-
tract with Shewitz, when the deed was made by Leg-
gett. Had she had such notice or knowledge, she
would have been a proper party. *Daily* v. *Litchfield*,
10 Mich. 29.

In *Walker* v. *Kelly*, 91 Mich. 212 (51 N. W. 934),
specific performance, subject to the dower rights, was
given, where the wife was not a party to the contract;
the decree providing for compensation to complainant
for present value of such contingent right of dower.
However, it has frequently been held that the juris-
diction of a court of equity to decree the specific per-
formance of contracts is not a matter of right in the
parties to be demanded *ex debito justitiæ*, but appli-
cations invoking this power of the court are addressed
to its sound and reasonable discretion, and are grant-
ed or rejected according to the circumstances of each
case. Specific performance is frequently refused,
although the defense is not such as would warrant the
rescission of the contract at the suit of the defendant.
36 Cyc. p. 548, and note; *Rust* v. *Conrad*, 47 Mich.
449-454 (11 N. W. 265, 41 Am. Rep. 720), and cases
cited; *Chicago, etc., R. Co.* v. *Lane*, 150 Mich. 162
(113 N. W. 22).

We think there are cogent reasons why specific per-
formance of the Shewitz contract against defendant
Pierson alone, with an abatement for the present
value of the wife's dower interest, should not be de-
creed. One reason is that it changes the contract be-
tween the parties, and another is that it compels the
vendee to accept an imperfect title, which he had not

in mind when he agreed to purchase. See cases cited in *Kuratli* v. *Jackson*, 60 Or. 203 (118 Pac. 192, 1013, 38 L. R. A. [N. S.] 1195, Am. & Eng. Ann. Cas. 1914A, 203).

We are of opinion that the circuit court erred in holding that the agreement of January 16, 1913, was null and void, and in ordering the same to be delivered up and canceled. We think, however, that Jacob Shewitz should be denied relief here, and should be relegated to a court of law for any relief in damages to which he may be entitled. His cross-bill will be dismissed, without prejudice to his right to sue at law for damages. The bill of complaint of Solomon will also be dismissed, and the decree below reversed, with costs to defendant Jacob Shewitz against Solomon. The defendant Bessie L. Pierson will recover her costs to be taxed against Shewitz.

BROOKE, C. J., and MCALVAY, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.