HAGER v. REY.

1. VENDOR AND PURCHASER—LAND CONTRACTS—DUTY TO PREPARE CONTRACT.

A clause in a memorandum agreement for the sale of a house and lot that "said second party agrees to buy the above described property on the terms and conditions named, and sign contract on or before one week from date," held, not to impose upon the buyer the duty to prepare and tender the contract.

2. SAME—REPUDIATION OF CONTRACT—DUTY TO TENDER CONTRACT —IDLE CEREMONY.

Where the payment of money and the signing of a contract by plaintiff for the purchase of said premises were to be performed concurrently, on a certain date, and before the arrival of said date defendant had repudiated the agreement, she is in no position, on appeal, to urge that plaintiff should have performed the idle ceremony of presenting a contract to her for her signature.

3. SAME—TENDER OF PAYMENT—LACHES.

In view of defendant's repudiation of her agreement to sell, plaintiff was not guilty of laches in not making payment, although it was not tendered by him until nearly a week after the agreed time.

4. SPECIFIC PERFORMANCE—LAND CONTRACTS — WAIVER — DUTY TO PREPARE CONTRACT.

In a suit by the buyer for specific performance of an agreement to sell a house and lot, plaintiff's willingness to accept a contract drawn by defendant's agent, which was not acceptable to her, *held*, not a waiver of his right to have a contract in pursuance of said agreement, nor did it relieve defendant from the obligations of her agreement to sell.

5. SAME—NOT A MATTER OF RIGHT—DISCRETION OF COURT—EQUITY.

While specific performance of a contract for the sale of real estate is not a matter of right, but rests in the sound discretion of the court, where performance is arbitrarily refused, it should be granted, in the absence of some showing that to do so would be inequitable.

Appeal from Ingham; Wiest (Howard), J. Submitted January 23, 1920. (Docket No. 71.) Decided February 27, 1920.

Bill by Alton J. Hager against Carrie Rey for the specific performance of a land contract. From a decree for plaintiff, defendant appeals. Affirmed.

*Brown & Kelley*, for plaintiff.

*L. B. Gardner*, for defendant.

STONE, J. The bill of complaint herein was filed

June 15, 1918, to obtain from the defendant the specific performance of a written contract or agreement in the words and figures following:

"Memorandum of Agreement.

"This agreement, made and entered into this date, by and between Carrie Rey, herein called first party, and A. Hager, herein called second party:

"Witnesseth: Said first party hereby agrees to sell to the said second party, the property known as south 2½ rods of the west five rods, more or less, of lot seven of block eighty in the city of Lansing, for the sum of $8,100, and to accept in payment thereof the sum of $100 on the signing of this agreement and the balance as follows:

"$900 on or before one week from date, the balance, $500, Nov. 25th, 1918, and $500 each 6 mo. thereafter until interest and principal is paid. Interest at 6%.

"Said first party further agrees to deliver papers showing a merchantable title, and furnish abstract and tax history posted to date and give possession on or before........19..

"Interest will not start until date of possession.

"Said second party agrees to buy the above described property on the terms and conditions named, and sign contract on or before one week from date.

"This contract is made to bind the heirs, executors, administrators, and assigns of the parties hereto and is subject to the consent of the owner.

"Lansing, Michigan, dated May 25, 1918.

"CARRIE REY,
"A. J. HAGER."

The steps leading up to the making of this agreement were substantially as follows: Alfred C. M. Johnson, a real estate agent, had been making an effort to sell the property in question for the defendant for some time. He had advertised the same and had been active in the matter for at least six months. The plaintiff got in touch with Johnson through such advertisement. On Saturday, May 25, 1918, the plaintiff and his wife, together with Johnson, met the defendant and her husband at the Rey home, that being

the property in question. On this occasion, after an examination of the property, the terms of the sale were agreed upon, and Johnson drew the agreement in question, which is known as "Exhibit A" in the record. It was signed by both parties, and defendant received plaintiff's check for $100 to apply on the sale. This check she retained, and it was cashed on June 1st. On or about the Thursday following May 25th, Johnson drew a land contract on what is known as the "Gleason Form," and he testified that he presented it to the defendant for her signature and approval and left it with her; that he saw her again on the same day, and several times before Saturday, June 1st; that before that time she notified Johnson that she would never agree to sell her place for anything but the cash. At this point Johnson testified as follows:

"*Q.* Is that when she told you she would never agree to sell her place for anything but cash?

"*A.* Yes, sir. I notified Mr. Hager of what she said. I urged her to sign it and go on with the deal and notified Mr. Hager to that effect. This was before the Saturday night that I had the meeting at my office.

"*Q.* What did Mr. Hager say to you with reference to the matter of the contract?

"*A.* He told me to get the contract signed or drawn up on the lines of that agreement; that he wanted to go on with the deal.

"*Q.* And in other words, state whether or not Mr. Hager acquiesced in Mrs. Rey's position?

"*A.* He did not. After I notified Mr. Hager about her claim, we met at my office Saturday night, June 1st. Mr. Hager came up Saturday night. Later Mr. and Mrs. Rey came into the office and we had quite a lengthy discussion. I tried to get them to go on with the deal in accordance with our agreement and Mrs. Rey refused to go on.

"*Q.* What did she say?

"*A.* Why she said she never agreed to sell the place in that way, that she always held out for the cash.

"*Q.* What did Mr. Hager say?

"*A.* He wanted to make that deal; he wanted to do it, but would do it only on the lines of the agreement that they had made. Mrs. Rey did not at any time change her position in respect to going on with this contract during that conversation, Saturday evening. Absolutely nothing was accomplished that night."

The defendant testified that she notified Johnson by telephone Saturday morning that the land contract was not like the agreement. She testified on direct examination, among other things, as follows:

"*Q.* What was the reason you did not sign this agreement, this contract? (It being the contract prepared by Johnson.)

"*A.* It did not read like the memorandum.

"*Q.* In what way did it differ?

"*A.* In the agreement they were to pay me $8,100, $100 of which I received on the 25th day of May by check from Mr. Johnson; $900 they were to pay me one week from that day, the first of June.

"*The Court:* We have got the writing, there is no need of going any further with it.

"*Q.* Were those the reasons then, and the other reasons as stated in here of the difference why you did not sign this contract?

"*A.* Yes, sir, and the other reasons."

On cross-examination the defendant also testified, referring to the proposed land contract as against the memorandum of agreement, so-called, as follows:

"*Q.* In what way was it different from the other agreement? What did you object to?

"*A.* I have stated that.

"*The Court:* You have not stated it on this question, he wants you to state it again.

"*A.* All right. On the agreement it reads like this: I was to get $8,100; $100, which I received by check that day, $900 a week from that day, which was June 1st; $500 on the principal on the 25th day of November, and interest, and every six months after that until it was paid.

"*Q.* What did you tell Mr. Johnson when you talked with him at that meeting on Saturday, what did you tell him was wrong with this contract?

"*A.* The very thing I am telling you, that the interest—

"*Q.* You told Mr. Johnson all of that?

"*A.* Well, not probably all of that."

It should be stated that on cross-examination the defendant denied having taken the position that she had not agreed to sell for anything but cash. In this she was contradicted both by the plaintiff and her agent, Johnson. Further on, in her cross-examination, she testified:

"*Q.* Outside of the matter of interest being paid every year, did you tell Mr. Hager of any other fault that you found with this land contract?    *    *    *

"*A.* He went out.

"*Q.* Before he went out—I am not expecting you to talk to him after that. Before he went out, did you tell him of any other fault that you found with this land contract?

"*A.* They were not talking about it; he was over there talking with Johnson.

"*The Court:* Can't you answer the question? Did you tell him any other reason than you have told us here?

"*A.* I did not.

"*The Court:* That is what we want to know."

Some time during the middle of the second week the defendant went to plaintiff and tendered back the $100, being the first payment made by the Hager check which she received on May 25th.

The husband of defendant, who was present at the meeting on Saturday, June 1st, and also present on the occasion when she offered to return the $100 to the plaintiff, testified as follows:

"*Q.* Did your wife point out to Mr. Hager at that time what objection she had to the contract, if you know, or if you heard?

"*A.* Why, I don't know as I can just say, only one thing was that it was not like the agreement, and that there was one point about the interest that was not right.

"*Q.* Isn't it a fact then, Mr. Rey, that the only objection that she told him—told Mr. Hager about at that time was the matter of interest, isn't that your recollection?

"*A.* Why, I would not say—I would not say whether there was anything—

"*Q.* Do you distinctly recall that she made some objection to the matter of interest—is that clear in your mind?

"*A.* She made some objection to that, yes, sir. Interest to be paid and the principal.

"*Q.* Do you recall, Mr. Rey, that she made any other objection to the land contract that Johnson had drawn?

"*A.* I don't think so, I would not say."

Nine hundred dollars were tendered to the defendant on June 6th. The plaintiff had given Johnson the money on June 6th, and Johnson went to the Rey home and offered the defendant the money, informing her that the plaintiff desired to go on and complete the agreement. The money was refused. Johnson testified that Mrs. Rey said that she would never go on with the deal according to that agreement; that she wanted the cash; that there was no other objection made by her at that time.

The evidence is undisputed that the plaintiff has at all times been ready, able and willing to comply with the terms of the original contract. The plaintiff testified that when the tender of the $100 was made to him by defendant during the week following June 1st, that she stated that she would not carry out the agreement because she had never agreed to sell the house for anything but cash, and that she made no other or different claim at that time.

It appears very clearly that the defendant's position with reference to the interest was a mistaken one. Under the terms of the memorandum agreement, specific performance of which is here prayed for, the $500 to be paid on November 25th and every six months thereafter was to be on account of both prin-

cipal and interest, and not interest in addition to the $500. Some objection was made, but not very clearly, that there was in the contract tendered by Johnson the right to pay $500 or more on or before every six months until the interest and principal were paid; and that payment of the whole principal and interest unpaid might be paid on any payment date.

The learned trial court, after hearing all of the evidence, disposed of the case in the following language, after setting forth the substance of the agreement:

"Plaintiff paid the $100 as agreed, and tendered the $900, but did not make the tender within the time stipulated. Mr. Johnson, a real estate agent employed by defendant to sell her property, prepared a land contract and took it to defendant to sign, which she refused to do, claiming that it did not follow the agreement, in that it provided for the payment of $500 each six months, including interest, and permitted the whole sum to be paid at the time of paying any installment. Defendant has never executed a land contract in accordance with the agreement to do so, or tendered such a contract to plaintiff, and it is fair to say that she would not have executed such a contract had one been tendered her. Plaintiff has been ready, willing and able to carry out the executory agreement, and claims that defendant refused to do so because she now wants cash for her property. Under the executory agreement it is clear that the semiannual payments of $500 include interest.

"Having in mind the acts of the parties after the signing of the memorandum agreement and the claims made by defendant relative to its meaning, the defendant is in no position to set up the claim that time was of the essence of the agreement so as to relieve her from performance because the $900 was not tendered and the land contract executed within the time agreed. Time was not of the essence of this agreement for a contract. *Solomon* v. *Schewitz,* 185 Mich. 630. See *Voltz* v. *Grummett,* 49 Mich. 453.

"The land contract defendant refused to sign was prepared by the real estate agent in her employ, and if it did not follow the agreement that was not a suffi-

cient reason for failure to have one prepared that did. Plaintiff's statement that the contract prepared by defendant's agent suited him, did not relieve defendant from the obligations of her executory contract nor does it show any insistence upon plaintiff's part to exact terms contrary to the agreement. Plaintiff had a right to say that the land contract drawn by defendant's agent suited him, without being charged with demanding something he was not entitled to have. The agreement on the part of plaintiff 'to sign contract' cannot be construed to mean that he should 'prepare the contract,' and besides, the defendant having refused to enter into a land contract in accordance with her agreement in reference to semiannual payments, is in no position now to urge that plaintiff should have performed the idle ceremony of presenting a contract to her for signature.

"Defendant has not been released from her agreement to sell, and. a decree for specific performance in accordance with the executory agreement is granted."

A careful reading of the evidence satisfies us that the trial court's findings upon the controlling questions of fact are supported by a clear preponderance of the evidence. A decree having been entered in pursuance of the foregoing opinion the defendant has appealed to this court.

Among other things it is claimed by appellant that the land contract provided for in the agreement was to be prepared, drawn and signed by plaintiff and presented to the defendant for her approval. We think counsel is mistaken in making this claim. The clause in the memorandum agreement was as follows:

"Said second party agrees to buy the above described property on the terms and conditions named, and sign contract on or before one week from date."

It will be observed that the $900 was also to be paid on or before one week from the date. In our opinion it was not the duty of the plaintiff to prepare and tender this contract. At all events, it appears

that before the time arrived for the making of this payment of $900 the defendant had repudiated the agreement—had refused to go on with the trade. The payment of $900, and the signing of the contract by the plaintiff, were acts to be performed simultaneously or concurrently. As bearing upon the general equities of the case the appellant has called our attention to the following cases: *Brin* v. *Michalski*, 188 Mich. 400; *Frazer* v. *Hovey*, 195 Mich. 160; *Ogooshevitz* v. *Arnold*, 197 Mich. 203. These cases are not, in our opinion, controlling here.

It is also claimed by counsel for appellant that time was of the essence of this agreement, and that the $900 not having been tendered within one week that the obligation of the defendant was at an end. The plaintiff tendered the $900 within a week of the time named for such payment in Exhibit A. The whole transaction covered a period of less than two weeks. The plaintiff was not guilty of any laches. What we have already said we think disposes of this question, namely, that before the time arrived for the payment of this money the defendant, without having prepared a contract in pursuance of the memorandum agreement, refused to go on with the deal. In other words, the defendant first broke the agreement. It should be remembered, and not lost sight of, that this bill was filed for the specific performance of Exhibit A, above set forth, and not of some other contract. It is true, as the circuit judge said, that the plaintiff was willing to accept the contract as drawn by Johnson, but his willingness to accept that contract did not waive his right to have a contract in pursuance of the agreement, when defendant refused to accept the Johnson contract; nor did it relieve the defendant from the obligations of her executory contract; "nor does it show an insistence upon plaintiff's part to exact terms contrary to the agreement. Plaintiff had a right

to say that the land contract drawn by defendant's agent suited him without being charged with demanding something he was not entitled to have." The agreement on the part of the plaintiff cannot be construed to mean that he should prepare the contract. It very clearly appears here that the defendant refused to accept the interest terms as provided in the memorandum agreement; and it would have been but an idle ceremony for the plaintiff to have prepared a contract for her signature.

Counsel for appellant claims that this is not a case where specific performance should be decreed, and quotes the language used in *Solomon* v. *Schewitz*, 185 Mich. 620, 631, as follows:

"However, it has frequently been held that the jurisdiction of a court of equity to decree specific performance of contracts is not a matter of right in the parties to be demanded *ex debito justitiæ*, but applications invoking this power of the court are addressed to its sound and reasonable discretion, and are granted or rejected according to the circumstances of each case. Specific performance is frequently refused, although the defense is not such as would warrant the rescission of the contract at the suit of the defendant." Citing cases.

Adhering to the above language, it may also be said that specific performance of a contract for the purchase of real estate may not be arbitrarily refused, but in the exercise of a sound legal discretion should be granted, in the absence of some showing that to do so would be inequitable. We agree with the trial court in its conclusion that the equities of this case are with the plaintiff, and that specific performance should be here ordered.

The decree of the circuit court is therefore affirmed, with costs to the plaintiff.

Moore, C. J., and Steere, Brooke, Fellows, Clark, Bird, and Sharpe, JJ., concurred.