FOSHEE v. KRUM.

1. SPECIFIC PERFORMANCE—PHYSICIAN AND PATIENT—OVERREACHING —EVIDENCE.

Offer of $8,000 plus a life interest in the home *held*, a fair offer and without overreaching on part of physician . who sought specific performance of written contract for purchase of patient's 80-acre farm, under evidence showing, among other things, that defendant patient initiated the discussion eventuating in the contract.

2. VENDOR AND PURCHASER—RETURN OF DOWN PAYMENT—UNMARKETABLE TITLE—RESCISSION BY VENDOR.

Vendor in land contract, providing for return of down payment in event the title was found to be unmarketable, does not thereby have the option of rescinding the contract by returning the down payment.

3. SPECIFIC PERFORMANCE—PHYSICIAN AND PATIENT—UNDUE INFLUENCE—FRAUD—CONSIDERATION—EVIDENCE—FARMS.

No scintilla of undue influence, fraud, misrepresentation, or inadequacy of consideration *held*, to have been shown in physician's suit for specific performance of written land contract for purchase of 80-acre farm from patient.

4. SAME—LOSS OF OLD-AGE ASSISTANCE BY VENDOR.

Fact that defendant vendor would lose old-age assistance he had been receiving because sale would be evidence of ownership of personal property in excess of statutory maximum does not justify a court of equity in setting aside a contract for sale of farm, where the taxes thereon were to be paid by the purchaser and the vendor would have a home for life and sufficient funds to keep him at least for a considerable period of time (CL 1948, §§ 400.27, 400.33, 400.34, 400.34a).

REFERENCES FOR POINTS IN HEADNOTES

[2] 55 Am Jur, Vendor and Purchaser §§ 25, 149, 157.
[3, 5, 8] 49 Am Jur, Specific Performance § 46 *et seq.*
[6] 49 Am Jur, Specific Performance §§ 8, 9.
[7] 17 Am Jur, Duress and Undue Influence §§ 39, 41.
[9, 10] 17 Am Jur, Duress and Undue Influence § 33.
[11] Generally as to evidence of undue influence, see 17 Am Jur, Duress and Undue Influence §§ 42, 43.

5. SAME—LAND CONTRACTS—PHYSICIAN AND PATIENT—THREATS—
UNDUE INFLUENCE—EVIDENCE.

Vendor's claim that the purchaser, a physician who had been
treating a serious infection in vendor's foot, had threatened
to discontinue his services and charge vendor $1,000 for serv-
ices rendered, if made, could not have influenced defendant
in the making of the contract of which specific performance
is now sought, where it is not claimed so-called threats were
made until after the contract had been entered into.

6. SAME—DISCRETION OF COURT—EXIGENCIES OF CASE.

The power to grant specific performance of a written land con-
tract rests within the sound discretion of the court, but the
court is not justified in withholding a decree for plaintiff
merely because of the exigencies of the case and a refusal
would be arbitrary, where there is an absence of some showing
that granting such relief would be inequitable.

7. EVIDENCE — PRESUMPTION OF UNDUE INFLUENCE — REBUTTAL —
WEIGHT OF EVIDENCE.

The presumption of undue influence arising from a confidential
and fiduciary relationship, such as physician and patient, when
they enter into a business transaction, stands until challenged
by rebutting evidence which tends to prove the circumstances,
fairness and good faith of the transaction, whereupon the party
asserting the invalidity of the transaction has burden of in-
troducing evidence in opposition to the rebutting evidence,
else fail to sustain his burden of showing invalidity, since it
then becomes a question as to the weight of the evidence pre-
sented.

8. VENDOR AND PURCHASER—PHYSICIAN AND PATIENT—CONSIDERA-
TION—MENTAL COMPETENCY—FRAUD—BURDEN OF PROOF AS TO
VALIDITY.

Land contract, entered into between physician, as purchaser, and
patient, as vendor, made for an adequate consideration, en-
tered into by vendor, who was mentally competent, knew
exactly what he was doing and in no way deceived or taken
advantage of, *held,* not invalid, the purchaser, in seeking
specific performance, having sustained his burden of showing
validity of the transaction.

9. DEEDS—FIDUCIARIES—IMPROPER INFLUENCE.

It is only improper influence which overcomes the will of the
grantor by one in a fiduciary relationship that makes the
deed invalid.

10. SAME—UNDUE INFLUENCE—EVIDENCE—OPPORTUNITY.

Undue influence upon a grantor may not be established by proof of opportunity alone.

11. VENDOR AND PURCHASER—UNDUE INFLUENCE—EVIDENCE.

Evidence established that the will of vendor under land contract was not overcome by the purchaser, his physician, where it was shown, among other things, the vendor himself originated the final transaction.

12. SAME—PHYSICIAN AND PATIENT—UNDUE INFLUENCE—ATTORNEY —EVIDENCE.

The failure of defendant vendor, a patient of plaintiff purchaser, who had been successfully treating a serious infection in defendant's foot, to be represented by an attorney when the parties entered into a land contract for the sale of defendant's 80-acre farm did not render the contract invalid, where, after preliminary agreement had been reached, an attorney suggested by plaintiff and who had been attorney for plaintiff and was well known to, and a friend of, defendant and fully approved of by him, merely presented the agreement in legal form without influencing the transaction at all.

13. SPECIFIC PERFORMANCE—WRITTEN LAND CONTRACT—DISCRETION OF COURT—PHYSICIAN AND PATIENT—UNDUE INFLUENCE—MENTAL COMPETENCY.

Decree granting specific performance of written land contract for sale of defendant's 80-acre farm to plaintiff, his physician, was not an abuse of discretion, where the contract was not unfair so far as defendant was concerned, no undue influence was exercised nor advantage taken of him and he was fully competent to make the contract.

Appeal from Superior Court for the City of Grand Rapids; Taylor (Thaddeus B.), J. Submitted January 10, 1952. (Docket No. 30, Calendar No. 45,253.) Decided March 6, 1952.

Bill by J. Clinton Foshee against Delbert D. Krum for specific performance of contract to sell land. Decree for plaintiff. Defendant appeals. Affirmed.

*Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*McMahon & Cook* (*Margaret Cook,* of 'counsel), for defendant.

Butzel, J. Plaintiff and appellee, Dr. J. Clinton Foshee, filed a bill for specific performance of a contract for the purchase of an 80-acre farm from Delbert D. Krum, defendant and appellant, vendor.

Plaintiff is a practicing physician and surgeon in Grand Rapids and has a summer home in Ada, Kent county, Michigan, not far from the 80-acre farm of defendant in the adjoining township of Vergennes in the same county. Plaintiff had previous business dealings with defendant as he had rented a portion of the farm for the raising of crops and for pasturing his herd of Jersey cattle. There had been a number of conversations between the parties in regard to the purchase of the farm by plaintiff. An old orchard on the farm had been neglected for years and was practically worthless; the outbuildings and barn were of almost no value and the home of defendant appeared in disrepair and badly needed a coat of paint and other repairs. The land itself was in reasonably fair condition.

Some time prior to the execution of the contract of sale, defendant was seriously ill with an infection in his toe. Plaintiff attended him as doctor and surgeon; gangrene had set in and it looked for a while as if defendant would lose part of the leg. Only the toe and a small part of the foot were amputated and plaintiff was justly given credit by defendant, as well as by others, for saving the remainder of the foot and leg. Defendant was very appreciative, as was only natural under the circumstances.

Defendant offered to sell the farm while still in the hospital and discussion about the sale of the farm was resumed while defendant was in a convalescent home following the operation. The parties agreed

to the sale and purchase of the farm for $8,000. An attorney was required to draw up the agreement and plaintiff suggested attorney Shivel of Grand Rapids. Mr. Shivel had lived for many years at Lowell, Michigan, not far from defendant's farm. Defendant knew him very well, regarded him most highly and was very agreeable to the suggestion that he be employed. Mr. Shivel's firm had previously done some work for plaintiff and represents plaintiff in the present action. Plaintiff called him by telephone about noon and spoke to a member of the firm who prepared a contract of purchase at once. Mr. Shivel brought it to the convalescent home later in the after-noon.

Mr. Shivel had nothing whatsoever to do with making the sale or its terms. As a matter of fact, he acted more as a scrivener, and it is not claimed that he exercised any influence over defendant. The contract was very simple, plain, unambiguous and readily understandable. It described the property, and stated the price of $8,000 of which $500 was to be paid down and the balance to be paid after Mr. Shivel had received an abstract and rendered his opinion that defendant had a marketable title. The contract further contained a clause, not unusual in a contract to sell real estate, to the effect that if title was found not to be marketable defendant was to return the $500 to plaintiff. No other damages were stipulated. The contract contains a few other provisions which are not material to the issue. Defendant read the contract and it was read by Mr. Shivel to the defendant. Plaintiff called attention to the fact that in addition to the $8,000 it had been agreed that defendant was to have the use of the first floor of the house for life, plaintiff obligating himself for its upkeep and the taxes. This was written into the contract before it was signed, and then witnessed by the matron of the convalescent

home and by Mr. Shivel. The $500 was paid and the defendant seemed very happy over the sale and expressed his pleasure to several people.

There had been some previous conversation between the parties about defendant going to Florida as the condition of his foot was such that it was improbable that he could ever work the farm again. Plaintiff advised him to go to Florida for the winter months and gave him the name of a party at whose resort or home he could stay for a reasonable sum. Defendant claimed that plaintiff had told him he would die if he did not go to Florida. However, this was uncorroborated and the trial court found that plaintiff did no more than make a friendly suggestion. It appears that previously defendant had discussed Florida with other persons and was enthusiastic about the possibilities of staying there.

The record leaves no doubt but that the price paid for the farm was adequate. Defendant's son, himself a disappointed prospective buyer, stated that the property was worth between $8,000 and $9,000. With $8,000 plus a life interest in the home for defendant, together with its upkeep and payment of taxes by plaintiff, the total purchase price was considerably more than $8,000. From all the testimony, therefore, we conclude that plaintiff's offer was a fair one and there was no overreaching of any kind.

Some days after he entered into the contract, defendant notified plaintiff that he would not go ahead with the deal. He claims that when he read the clause stating that $500 would be returned to the purchaser he thought it meant that he also could call the deal off upon the return of the $500 if he changed his mind. The contract does not so state, nor is there anything in it that would suggest this right. There was no discussion to this effect and defendant does not claim that Mr. Shivel misled him about the effect of the contract. If the title

were found to be marketable he undoubtedly could have held plaintiff for damages for refusal to complete the purchase.

Many witnesses testified as to the mental competency of defendant. It is fully shown that he was able to understand exactly what he was doing and we find no undue advantage taken of him. The question of the sale of the property had been a question under consideration by defendant for a long time. Defendant himself on the witness stand testified that he had confidence in Mr. Shivel and stated in the strongest terms that he regarded the plaintiff as an honest man who had not practiced any deception. We cannot, therefore, on a review of the record find evidence of a scintilla of undue influence, fraud, misrepresentation, or inadequacy of consideration.

It appeared also that plaintiff will suffer some hardship if this contract is not enforced, for he alleges that upon entering into the contract, he lost the opportunity he had of renting another farm to pasture his cattle and he required the farm which he had purchased from defendant for that purpose.

At the hearing, another element entered into the case. Defendant for a time had been receiving old-age assistance from the State of Michigan. It amounted to $50 a month. In accordance with CL 1948, § 400.27 (Stat Ann 1950 Rev § 16.427), he would lose the assistance if he owned tangible or intangible personal properties having a market value in excess of $500. However, a witness who was a member of the State welfare commission called attention to the fact that if defendant should die and leave an estate in excess of $100, defendant's estate would be responsible for all moneys paid defendant since October, 1947. CL 1948, §§ 400.33, 400.34, 400.34a (Stat Ann 1950 Rev §§ 16.433, 16.434, 16.434[1]). Nothing whatsoever was stated about the old-age assistance at the time of making the contract. It appears to have

been an afterthought. Nor does it appeal to a court of equity that the contract should be set aside because the seller would not receive old-age assistance during the period when he was able to take care of himself and when he would have a home for life together with upkeep and taxes and sufficient funds to keep him at least for a considerable period of time.

Defendant also claimed that plaintiff threatened to discontinue his services to defendant and charge him $1,000 for services rendered if defendant refused to go ahead with the deal. This was denied by plaintiff, and earlier, by defendant himself in the presence of the matron of the convalescent home. The trial judge expressed his doubt that plaintiff made the threat. Plaintiff later wrote to defendant that he would leave the case in view of the litigation but would remain on if defendant wanted him to do so. He did remain. In any event, it is not claimed that any of these so-called threats were made until after the contract was entered into, so it could not have influenced the defendant.

It is conceded that the power to grant specific performance rests within the sound discretion of the court. The court, however, is not justified in withholding a decree for specific performance merely because of the exigencies of a case. *Tiley* v. *Chapman,* 320 Mich 173. In *Hager* v. *Rey,* 209 Mich 194, we stated the rule that specific performance of a contract for the purchase of real estate may not be arbitrarily refused; but in the exercise of sound legal discretion should be granted, in the absence of some showing that to do so would be inequitable.

Defendant claims that there is a presumption of undue influence arising from a confidential and fiduciary relationship, and a presumption against the validity of an instrument when given to a person who stands in such relationship until it is

challenged by rebutting evidence which tends to prove the circumstances, fairness and good faith of the transaction. In that event the presumption cannot be weighed against such rebutting evidence but sound supporting evidence must be introduced against it and then it becomes a question of weighing the actual evidence introduced without giving any evidential force to the presumption itself. Plaintiff concedes the correctness of this rule, but emphasizes that the presumption never shifts the burden of proving the whole case by the one who seeks to prove the existence of undue influence. Irrespective of the burden in the instant case, we find from examination of the record it was fully sustained by plaintiff. Some cases from other jurisdictions are cited by defendant in which transactions between physician and patient, in a confidential relationship, have been held voidable at the instance of the patient, but in almost all of the cases which we have examined some unconscionable advantage was taken of the patient. We find that the contract was fair, was made for an adequate consideration, and was entered into by defendant who was mentally competent and knew exactly what he was doing. He was in no way deceived or taken advantage of and if burden is upon plaintiff to prove the fairness of the transaction, we believe that he has fully sustained it.

It is the rule in Michigan that only improper influence which overcame the will of the testator or grantor by one in a fiduciary relationship made their will or deed invalid. See *Schneider* v. *Vosburgh,* 143 Mich 476; *In re Saunders' Estate,* 235 Mich 342; *In re Spinner's Estate,* 248 Mich 263; *In re Cotcher's Estate,* 274 Mich 154. Nor can undue influence be established by proof of opportunity alone. *In re Murray's Estate,* 219 Mich 70. The proofs establish that although plaintiff might have had an opportu-

nity, he certainly did not overcome the will of the defendant, who himself originated the final transaction.

Defendant, however, makes the further claim that the fact that defendant was not represented by legal counsel while plaintiff's own attorney was present makes the contract voidable at defendant's instance. It is conceded that in most jurisdictions there is no hard and fast rule requiring independent legal advice. The cases are reviewed in the notes to 123 ALR 1505 *et seq*. There is no such rule in Michigan. The rule in regard to presumption of invalidity in the case of a confidential relationship has been applied more frequently to cases where gifts, devises and bequests, or transfers of property without adequate consideration have been involved. We find nothing in the transaction before us that required legal advice. It required solely the drafting of a legal contract for the sale and purchase of real estate. The parties' minds had already been made up and the selection of the attorney met with the full approval of defendant. The attorney did not influence the transaction one iota; the terms of the verbal agreement to sell were settled; he presented them in legal form and was present when the binding contract was made. We do not believe that under the circumstances the fact that he had been attorney for plaintiff in addition to being defendant's friend affects the transaction.

The judge who heard the testimony found that the contract was not unfair so far as defendant was concerned, that no undue influence had been exercised; that defendant was fully competent to make the contract; that no advantage was taken of him. The judge decreed specific performance. There was

no abuse of sound discretion by him and he came to the correct conclusion.

The decree is affirmed, with costs to plaintiff.

North, C. J., and Dethmers, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.