HENRY v. ROUSE.

1. SPECIFIC PERFORMANCE—OMITTED MATERIAL PROVISIONS OF CONTRACT—MEETING OF MINDS.

A case for specific performance of a contract is not made out, where it appears that material matters are not clear, certain or complete, but are left by the parties so obscure or undefined that the court cannot say whether or not the minds of the parties met upon all the essential particulars, or if they did, the court cannot say exactly upon what substantial terms they did agree.

2. SAME—COURT CANNOT MAKE NEW CONTRACT OR SUPPLY MATERIAL STIPULATIONS.

Equity cannot make a new contract or supply any material stipulation thereof for the parties, but must enforce the contract according to its terms or not at all.

3. VENDOR AND PURCHASER—DEPOSIT—TITLE.

A deposit with vendors of realty, together with their receipt therefor, without an agreement concerning sale of the property, *held*, not to have created a contract enforceable by the parties making the deposit, nor to constitute a cloud upon the title of the property involved, nor to have created an unmerchantable title.

4. SAME—FORFEITURE OF DEPOSIT.

Plaintiffs, as purchasers under a land contract wherein it was provided that the vendors were to be allowed time to make title merchantable in case it were found not to be so, who knew that deposit had been made by other prospective purchasers, forfeited their deposit, where they made their demand therefor less than 30 days after having made the deposit but after the vendors had returned the previously-made deposit.

Appeal from Oakland; Holland (H. Russel), J. Submitted January 10, 1956. (Docket No. 27, Calendar No. 46,483.) Decided April 2, 1956.

Bill by Charles Henry and Florence Henry against James R. Rouse, Emma L. Rouse, Leslie R. Tripp and

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 49 Am Jur, Specific Performance § 22.
[4] 55 Am Jur, Vendor and Purchaser § 641.

the Community National Bank, a national banking corporation, to determine rights to deposit money on unconsummated real-estate transaction. Decree for defendants dismissing bill and directing payment of funds by bank to real-estate broker. Plaintiffs appeal. Affirmed.

*Odin H. Johnson,* for plaintiffs.

*Verne C. Hampton,* for defendants Rouse.

*Patterson & Patterson and Barrett,* for defendant Community National Bank.

SHARPE, J. Plaintiffs, Charles Henry and Florence Henry, his wife, instituted a suit in the circuit court of Oakland county in chancery to enjoin the disposing of $1,000 paid by them to James R. Rouse and Emma L. Rouse, his wife, and to determine the ownership of the amount involved. The record shows that on April 12, 1952, plaintiffs and defendants, James R. Rouse and Emma L. Rouse, his wife, entered into an agreement to purchase a parcel of real estate owned by the Rouses. The agreement contained the following:

"If the abstract or owner's title insurance policy shall disclose the title to be unmerchantable, then, in that case, the owner shall, as soon as possible, take such action as will be necessary to make the title merchantable, and the estimated cost thereof shall be deducted from the proceeds of said sale and held in trust by the above-mentioned realtor to warrant the payment of said cost, and any excess above such cost shall be paid to the owner as soon as title is made merchantable. If title proves incurable, all money paid shall be returned forthwith. Time is the essence of this agreement, and upon failure of the purchaser to carry out this agreement, the purchase deposit

tendered and so deposited shall be forfeited as liqui-
dated damages for breach of this agreement."

It also appears that on or about March 15, 1952, a
Mr. and Mrs. Alfred DuPont had made a deposit of
$2,044.70 on the same house. A few days later Alfred
DuPont returned and obtained $50 of the deposit.
On April 24, 1952, the Rouses executed their check in
the amount of $1,994.70 to Mr. and Mrs. DuPont
representing the balance of the deposit. On the back
of the check the following language appeared:

"By the cashing of this check the said Alfred J.
DuPont and Anne DuPont do forever release the said
James and Emma Rouse from all claims and de-
mands from the beginning of time to date hereof."

The above check was indorsed and deposited by
Anne DuPont in a joint account of Alfred DuPont
and Anne DuPont on April 29, 1952, in the Com-
munity National Bank at Pontiac. It is to be noted
that Alfred DuPont did not indorse the check owing
to the fact that he was in California suffering from
a mental disturbance.

About May 20, 1952, Mr. Henry noted that the can-
celled check of $1,000, representing the deposit that
had been given to James Rouse, was not indorsed by
James Rouse. Plaintiff, Charles Henry, directed the
Community National Bank to stop payment on the
check. The check given to the Rouses had been
turned over to defendant realtor, Leslie R. Tripp,
and credited by defendant bank on April 12, 1952, to
the trust account of Leslie R. Tripp. However, on
May 29, 1952, by letter, James Rouse authorized the
Community National Bank of Pontiac as follows:

"I, therefore, by this instrument do in effect in-
dorse said check and acknowledge that the said Les-
lie R. Tripp is the legal owner of said check and was
the legal owner at the time he deposited the same in
your bank, and the said Leslie R. Tripp is entitled to

the credit of $1,000 shown by the books of your bank as having been given his trust account as the result of his deposit of said check on April 12, 1952."

On May 31, 1952, defendant bank took said $1,000 from the trust account of Leslie R. Tripp in the form of a cashier's check, payable to Community National Bank, and is holding it in escrow pending determination of this litigation. On April 23, 1952, plaintiffs received an opinion from their attorney, a part of which reads as follows:

"It appears that shortly before the signing of this agreement between yourself and wife and Mr. and Mrs. Rouse, a Mr. DuPont and wife paid the sum of $1,994.70 on this property and received a receipt for this money from the Rouses. It further appears that at the time of this transaction Mr. DuPont was either an out-patient from the Pontiac State Hospital or had been a patient and was temporarily released. Since this time Mr. DuPont has left the State of Michigan and is now, as I am informed and believe, in the State of California. He apparently is suffering from some sort of mental disturbance.

"It further appears that the transaction whereby he paid the Rouses approximately $2,000 is a part of a further transaction in which he sold his own home and that Mrs. DuPont is now attempting to set aside this sale and to recover the money which was paid as a down payment on the Dick avenue property.

"In order for the Rouses to be in the position to deliver good title and to be relieved of their having taken a down payment from the DuPonts it would seem that it would be necessary to have a guardian appointed for Mr. DuPont and thereafter to have a release executed by said guardian and a receipt acknowledging the termination of the sale contemplated by this down payment.

"While this matter does not appear on the abstract you are chargeable with notice thereof inasmuch as litigation is now pending over the dilemma which it has caused."

On May 8, 1952, plaintiffs notified the Rouses and Leslie R. Tripp, realtor, that they elected to terminate the purchase agreement and made demand for the return of the $1,000 paid on April 12, 1952. It also appears that a petition for guardianship for Mr. DuPont was filed August 23, 1952, and letters of guardianship were issued on November 14, 1952. On June 4, 1952, plaintiffs filed their bill of complaint in the circuit court of Oakland county. Answers were filed by the defendants to the bill of complaint. The cause came on for trial on November 25, 1953. On January 25, 1954, a decree was entered which contained the following:

"It is ordered that the plaintiffs' bill of complaint be and the same is hereby dismissed, and that plaintiffs are not entitled to the relief as prayed for in their bill of complaint.

"It is further ordered, adjudged and decreed that the Community National Bank, a national banking corporation, pay to Leslie R. Tripp, broker, the sum of $1,000, and take receipt therefore, which shall release said bank from all liability."

In an opinion filed January 5, 1954, the trial court stated:

"1. There was no written agreement on the part of the DuPonts to buy nor on the part of the Rouses to sell.

"2. Mr. DuPont took back a part of the total deposit ($50 thereof) within 3 days after making the initial deposit.

"3. Mrs. DuPont on the day before the purchase agreement here involved was executed, declared that she did not want to go through with any purchase of the Rouse property due to her husband's mental illness and because he was at the time in the State of California.

"4. The DuPonts never made any demand of the Rouses to convey.

"5. The Rouses returned all of the purchase money to the DuPonts as expeditiously as possible, although it must be admitted that Mr. DuPont never indorsed the check by which the deposit was returned nor ever gave any formal release to the Rouses.

"Even if the DuPont deposit were a serious obstacle to the consummation of the Henry-Rouse agreement to which contention on the part of the plaintiffs the court cannot subscribe, still the owners, Mr. and Mrs. Rouse, under the quoted part of exhibit 1, were entitled to a reasonable time to make the title merchantable. This reasonable time was not afforded them. The testimony in this case clearly demonstrates that the Rouses were desirous of entering into an escrow agreement with the plaintiffs to the end that the rights of all parties might be protected while any irregularities having to do with marketability were being cleared up.   *   *   *   Plaintiffs Henry would have nothing to do with such agreement or arrangement."

Plaintiffs appeal and urge that they were justified in refusing to consummate the sale because the title to the property was unmerchantable. It appears that the basis of this claim grows out of the fact that the Rouses accepted the sum of $2,044.70 from the DuPonts. We note that the sales agreement between plaintiffs and the Rouses provided that in the event the title was unmerchantable the seller was given time to make the title merchantable, and if the seller was unable to effect merchantable title he was required to return the deposit. We also note that there was no agreement between the Rouses and DuPonts concerning the sale of this property, except the receipt for the deposit. It also appears that the DuPonts later recovered their deposit.

Under the facts as shown in this case the DuPonts could not have specific performance of conveyance of the property. In *Czeizler* v. *Radke,* 309 Mich 349, 358, we quoted with approval from 49 Am Jur, Specific Performance, § 22, pp 35, 36, as follows:

" 'Whenever it appears that material matters are not clear, certain and complete, but are left by the parties so obscure or undefined that the court cannot say whether or not the minds of the parties met upon all the essential particulars, or if they did, the court cannot say exactly upon what substantial terms they agreed, the case is not one for specific performance. Equity cannot make a new contract for the parties, but must enforce the contract according to its terms or not at all; the court will not make a contract for the parties or supply any material stipulation thereof.' "

In our opinion the deposit of the DuPonts did not constitute a cloud upon the title and did not create an unmerchantable title. It also appears that the Rouses proceeded immediately to return the money to the DuPonts after they had accepted the $1,000 deposit from plaintiffs. It appears that on April 29, 1952, ten days before plaintiffs attempted to cancel the purchase agreement, Mrs. DuPont took the refund check to the bank and indorsed her name as well as that of Mr. DuPont and the money was removed from the Rouses' bank account. Moreover, the trial court found as a fact that at the time plaintiffs entered into the purchase contract, they were informed by Mrs. Rouse that a deposit had been made by the DuPonts for the purchase of the property. We note that plaintiffs, on May 8, 1952, notified the Rouses that the purchase agreement was terminated. This notice was given within a period of less than 30 days after plaintiffs had made their deposit on the purchase of the property. In our opinion plaintiffs failed to live up to the terms of the agreement and thereby forfeited any claim to the deposit.

The decree of the trial court is affirmed, with costs.

DETHMERS, C. J., and SMITH, REID, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.