Whitbeck, P.J.
Plaintiffs Diane Zurcher and James Zurcher appeal as of right the trial court’s denial of their pretrial motion for summary disposition, arguing that a document signed by them and defendant Barbara Herveat constituted a binding contract for the Zurchers’ purchase of Herveat’s real property in Torch Lake Township. The basic issue before us is whether there was a binding contract between the parties or whether Herveat’s additions to the purchase agree- *271 merit converted her acceptance into a counteroffer. The resolution of this issue is complicated by the fact that the underlying action was one for specific performance, an equitable action, with only a nominal claim for damages. Nonetheless, the trial court allowed the entire matter to go to a jury and therefore made no findings of fact regarding the Zurchers’ equitable claim. We hold that this was clear error and therefore reverse and remand for further proceedings.
I. BASIC FACTS AND PROCEDURAL HISTORY
In 1987, the Zurchers purchased a cottage on Rabbit Bay, which is located near Houghton in Michigan’s Upper Peninsula. Herveat owned a cottage immediately adjacent to the Zurchers’ cottage and, over the years, Herveat and Diane Zurcher became friends. In the course of their conversations in the mid-1990s, Herveat would occasionally express interest in selling her cottage. Diane Zurcher indicated that she and her husband were interested in buying the property if Herveat ever did decide to sell it.
In June 1995, Herveat decided to sell her cottage. Herveat sent a letter to the Zurchers to inform them about this decision, stating:
Dear Diane & Jim,
I have decided to sell Rabbit Bay. I had it appraised last summer. It was valued at $59,900, so that’s what I’m asking.
I promised you first chance. Please let me know if you’re interested, if possible by July 5. I want to sell this summer.
If you aren’t interested, I want to get it on the market fast.
Love Barb
The same day they received the letter, the Zurchers decided to buy the cottage. Diane Zurcher called *272 Herveat that night and, after inquiring whether Herveat was “really sure” about selling, told Herveat that she and her husband wanted to buy the cottage. Over the next week, the Zurchers reviewed their finances and, for purposes of obtaining a mortgage, visited Jay Ruohonen, a loan officer at Houghton National Bank. When the Zurchers met with Ruohonen, Diane Zurcher told him that Herveat was her friend and that the purchase agreement had been oral. Ruohonen told her that she should obtain a written contract, and he provided her with a standard form to complete.
Diane Zurcher completed the form, which was entitled “authorized purchase agreement” (the purchase agreement) and which stated at the top: “This is a legally binding contract. If not understood, seek competent advice.”
The Zurchers signed the purchase agreement on July 21, 1995, and mailed the signed purchase agreement to Herveat for her signature. Herveat signed the purchase agreement on August 16, 1995, below the caption at the bottom of the form entitled “owner’s acceptance.” The first sentence below the caption stated, “i/we hereby accept the above proposal and agree to sell and convey to the above named Purchaser the premises herein described at the time and subject to the terms above set forth.” The purchase agreement correctly identified the property as “Part of Section 15, T54N-R32-W, Torch Lake Township” but incorrectly stated that it was in Oakland County. The purchase agreement stated that the purchase price was $59,900. The purchase agreement identified the Zurchers as the purchasers and Herveat as the seller. However, in the body of the purchase agreement, *273 under the caption “the terms of purchase to be as follows,” the Zurchers had included the following typewritten sentence:
Purchase is to include all furnishings in house, sauna and shed, with the exception of: wall hangings and pictures, braided rugs, Singer Sewing Machine & Cabinet and small cedar chest located in living room.
Following this sentence, Herveat, in handwriting, added these words before Ruohonen faxed the purchase agreement to the Zurchers:
[With the additional exception of] lawn mower and ceramic vases—Also all costs & fees (except for proration of 1995 taxes below and preparation of deed) related to sale will be paid by Purchaser, including certifications^]
After Ruohonen faxed the purchase agreement to the Zurchers, Herveat visited her attorney, who prepared a warranty deed for the transfer of the property in exchange for $59,900. The attorney was to present the deed to Ruohonen at the closing, because Herveat was leaving the Houghton area and could not attend the closing in person. Herveat apparently signed the deed.
When the deed was being prepared, Herveat apparently began having second thoughts about selling the property, but still felt that the maintenance would be too difficult for her. That night, however, a neighbor approached Herveat and offered to help with the maintenance of her cottage, and Herveat apparently began to feel that she could keep the property and decided that she could not go through with the agree *274 ment. Once home, Herveat telephoned the Zurchers and spoke with Diane Zurcher, telling her that she could not sell the property.
In mid-November 1995, the Zurchers sued Herveat for breach of contract and sought specific performance as well as reimbursement for expenses incurred as a result of the alleged breach. In her answer, Herveat claimed that no contract had existed between the parties and that, even if one had existed, it was rescinded by mutual agreement.
In early October 1996, the Zurchers moved for summaiy disposition under MCR 2.116(C)(10), claiming that the parties had formed a legally binding contract from which the Zurchers had not released Herveat. Herveat responded with her own motion for summary disposition, claiming (1) that a contract had not existed between the parties because the purchase agreement misidentified the property, listed no time for closing, and contained no remedy provision, (2) that Herveat’s addition of terms to the purchase agreement created a counteroffer that the Zurchers did not accept, and (3) that the offer was revoked when Herveat informed Diane Zurcher that she did not want to sell the property. In late October 1996, the trial court denied both parties’ motions for summary disposition. The core of the trial court’s determination regarding the motions was as follows:
There are questions. There are questions of fact that have to be resolved. And I’m going to deny both motions. Taking the evidence in the most favorable light to the opposing party, I do not feel that summary judgment is warranted at this time. [Emphasis supplied.]
*275 In a subsequent order, the trial court ordered that the matter be mediated and the mediators unanimously awarded $6,000 to the Zurchers, “so long as acceptance constitutes complete settlement of all claims.” The Zurchers filed no response to the mediation evaluation, effectively rejecting the evaluation. The case then went to trial on both the Zurchers’ equitable claim for specific performance and their claim for damages. At the close of the evidence both parties moved for a directed verdict, the trial court denied both motions, the jury found that no contract had existed between the parties, and the trial court awarded Herveat $4,130.97 in mediation sanctions. On appeal the Zurchers contend that the trial court erred in denying their motion for summary disposition[1] and that they were and are entitled to specific performance of the purchase agreement.[2]
H. STANDARD OF REVIEW
This Court reviews a trial court’s grant or denial of summary disposition pursuant to MCR 2.116(C)(10), based on a finding that there is no genuine issue of material fact, de novo. Pinckney Community Schools v Continental Casualty Co, 213 Mich App 521, 525; 540 NW2d 748 (1995). As does the trial court, we look at the entire record and, viewing the evidence in favor of the nonmoving party, decide if an issue exists about which reasonable minds might differ. Id.
*276 m. MATERIAL TERMS OF A BINDING CONTRACT FOR THE SALE OF LAND
A. INTRODUCTION
At the outset, it is well to keep certain key distinctions with respect to this area of the law firmly in mind. First, there is the distinction between the form of a contract for the sale of land and the substance of that contract. Second, there is the distinction between a contract for the sale of land and a “land contract.”
B. FORM VERSUS SUBSTANCE
(1) FORM AS DICTATED BY THE STATUTE OF FRAUDS
In Michigan, as elsewhere, the form of a contract for the sale of land is dictated by the statute of frauds.[3] In its current form, the statute of frauds states:
*277 No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing. [MCL 566.106; MSA 26.906.]
Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing .... [MCL 566.108; MSA 26.908.]
Simply put, therefore, a contract for the sale of land must, to survive a challenge under the statute of frauds, (1) be in writing and (2) be signed by the seller or someone lawfully authorized by the seller in writing. Although a number of cases explain, amplify, limit, or distinguish the language of the statute of frauds[4], at their heart these cases deal with one or both of these two elements. Indeed, in this regard, the Michigan Supreme Court in Goslin v Goslin, 369 Mich 372, 376; 120 NW2d 242 (1963), quoting 2 Corbin, Contracts, § 498, p 683, stated:
*278 “We may well start with this one general doctrine: There are few, if any, specific and uniform requirements. The statute itself prescribes none; and a study of the existing thousands of cases does not justify us in asserting their existence. Some note or memorandum having substantial probative value in establishing the contract must exist; but its sufficiency in attaining the purpose of the statute depends in each case upon the setting in which it is found.”[5]
We note that the interpretation of the statute of frauds has evolved somewhat over time, particularly with respect to the question whether parol evidence could be admitted to “fill out” the terms of a contract for the sale of land. Earlier courts were fairly strict in their enforcement[6] but the recent trend has been a more liberal application of the statute.[7]
*279 The substance of a binding contract for the sale of land is a subject separate from its sufficiency under the statute of frauds and one that is governed by the general contract law concept that there must be a meeting of the minds regarding the “essential particulars” of the transaction. See, e.g. Henry v Rouse, 345 Mich 86, 92; 75 NW2d 836 (1956). For perfectly understandable reasons, however, any number of cases tend to conflate the form of a binding contract, as required by the two elements of the statute of frauds, with the substance of such a contract, as required by general principles of contract law.
For example, in Gedvick v Hill, 333 Mich 689, 695; 53 NW2d 583 (1952), the Michigan Supreme Court segued between consideration of the substance of the document in question and its form. The Court first stated that “[t]he primary question in this litigation is whether the document submitted in evidence as exhibit A was intended to be a memorandum of an agreed sale of the farm, and as such constituted a sufficient compliance with the requirements of the statute of frauds touching the transfer of real property.” Id. at 692 (emphasis supplied). The Court, id. at 695, went on to quote Cooper v Pierson, 212 Mich 657, 660; 180 NW 351 (1920), to the effect that, to be sufficient under the statute of frauds, a memorandum “ ‘must be complete in itself, and leave nothing to rest in parol.’ ” The Court then quoted from the next sentence in Cooper, to the effect that, “ ‘[I]t [the memorandum] must be certain and definite as to the par *280 ties, property, consideration, premises, and time of performance.’ ”[8] Gedvick, supra at 695.
Given that the courts of that era were generally operating under a strict construction of the statute of frauds with respect to parol evidence, this conflation of the form of a contract for the sale of land with the substance of such a contract was perhaps unavoidable. If such a contract were required to be “complete in itself,” then the courts would inevitably be called on to assess the completeness of the contract and, thus, its substance.[9]
This Court has, in the modem era when the admission of parol evidence is viewed much more liberally, on occasion also conflated form questions under the statute of frauds with substance questions under general contract law principles. For example, in Kojaian *281 v Ernst, 177 Mich App 727, 730; 442 NW2d 286 (1989), this Court stated:
*280 This agreement contains the essential elements of a contract, and is certain and definite so far as it goes. The parties, property, consideration, terms, and time of performance are clearly stated.
*281 All essential terms of an agreement to sell real estate must be in a writing that is signed by the party or parties to be held to the agreement for that agreement to be enforceable. Brotman v Roelofs, 70 Mich App 719; 246 NW2d 368 (1976), lv den 399 Mich 801 (1977). We conclude that the two documents comprising the writing in this case, i.e., plaintiff’s check and Mr. Ernst’s tax receipt, fail to set forth all the essential terms of the parties’ agreement. The writing therefore fails to satisfy the statute of frauds. [Emphasis supplied.]![10]
The Kojaian panel then went on to state, again citing Brotman, that under the more liberal application of the statute of frauds, “the material terms which must be established before an agreement becomes enforceable are generally the identification of the parties, the property, and the consideration.” Kojaian, supra at 731.
Clearly, Kojaian was a statute of frauds case. However, Brotman, in which the plaintiff sought specific performance of a contract to convey real estate, had nothing whatever to do with the statute of frauds. Rather, the pertinent portion of Brotman dealt with whether the trial court in that matter properly granted specific performance where the agreement had failed to provide an absolute closing date. Brotman, supra at 726. Thus, the Kojaian panel used general contract principles to decide a statute of frauds question. We emphasize that this approach, although somewhat confusing, does not make the general con *282 tract law principles in question invalid; rather, this approach simply tends to blur the distinction between the formalistic requirements of the statute of frauds and the substantive requirements of contract law.
(2) SUBSTANCE AS DICTATED BY GENERAL CONTRACT LAW PRINCIPLES
A general requirement for a valid contract for the sale of land is that it contain certain essential elements. 77 Am Jur 2d, Vendor and Purchaser, § 5, p 121. More specifically, “such a contract must generally be in writing and must set forth the terms of the agreement with sufficient certainty and definiteness, specifying the identities of the parties and their mutual assent, the property which is the subject of the contract, the price of such property, and the consideration.” Id. at pp 121-122. It is essential that an enforceable, real estate sales contract
either set forth the price to be paid by the purchaser or furnish a basis from which the price may be ascertained. Under this rule, indefiniteness as to the method of payment of the purchase price, such as where a contract provides that the terms of payment are to be left for future negotiation, renders such a contract unenforceable and precludes the recovery of damages in an action for breach of the alleged contract. [Id. at § 8, p 124.]
Similarly, it is also required that an adequate description of the land be included in the contract. Such a description is acceptable “if it discloses with sufficient certainty what the intention of the grantor is with respect to the quantity and location of the land to which reference is made so that its identification is practicable.” Id. at § 11, p 126. Finally, another essential term of a land sale contract is the identification of *283 the parties. A contract meets this requirement by designating “the names of the buyer and the seller with sufficient certainty so as to identify them.” Id. at § 12, p 127.
In Michigan,[11] just as interpretations of the statute of frauds have shifted over time, so too have the general contract law principles that govern the substance *284 of a contract for the sale of land. In Miller v Smith, 140 Mich 524, 527; 103 NW 872 (1905), a case involving damages rather than specific performance, the Michigan Supreme Court held that a land contract that identified the parties, the property, and the consideration was “a clear agreement for the sale of cer *285 tain real estate, properly described, for a certain price, upon certain terms, [that] acknowledges the receipt of part payment.” In Brin v Michalski, 188 Mich 400, 406; 154 NW 110 (1915), a specific performance case, the defendants contended that essential provisions—including terms relating to defeasance, insurance, repairs, payment of taxes, and possession—were not mentioned in the contract and therefore specific performance should be denied. The Court did not agree, holding that
[t]his agreement contains the essential elements of a contract, and is certain and definite so far as it goes. The parties, property, consideration, terms, and time of performance are clearly stated. [Id. (emphasis supplied).]
See also Milner Hotels, Inc v Ehrman, 307 Mich 347, 356; 11 NW2d 914 (1943), a specific performance case that quotes with approval from the syllabus in Brin, supra at 400, regarding the essential terms of a land contract (i.e., “ ‘parties, properly, consideration, terms and time of performance’ ”) and holds that, although the parties discussed but did not agree on minor conditions “dehors the agreement,” the agreement was binding. See, further, Rathbun v Herche, 323 Mich 160, 165-166; 35 NW2d 230 (1948), another specific performance case, in which the Court quoted with approval the syllabus in Milner Hotels, supra at 347, and also held:
Exhibit 1, as signed by the respective parties, embodies all the terms essential to a valid land contract. It names the parties, accurately describes the property, provides for marketable title, fixes the contract price, the amount and time of instalment [sic] payments, the rate of interest on unpaid sums, and the adjustment of taxes and assessments. And by plain inference it provides right of posses *286 sion in the vendee. Such a contract would be a complete and valid contract notwithstanding it contained no provision as to repairs, insurance, or right of the purchaser to assign his interest. [Rathbun, supra at 165 (emphasis supplied).]
This Court has also set out what it considers to be the “essential” or “material” terms of contracts for the sale of land. In Dassance v Nienhuis, 57 Mich App 422, 430; 225 NW2d 789 (1975), a specific performance case, this Court, citing Milner Hotels and Rathbun, held that
[w]hile it is true that specific performance is not an appropriate remedy where material matters of the contract are not ascertainable, Henry v Rouse, 345 Mich 86, 92; 75 NW2d 836 (1956), we are not faced with that situation here. In the case at bar, the material terms of the contract between plaintiffs and defendant Nienhuis such as the property, the parties and the consideration, were clearly established. Those matters which defendants claim to make the contract unenforceable were not material, and specific performance was, therefore, properly granted. [Emphasis supplied.]
In Brotman, supra at 727, another specific performance case, this Court took the next step. Rather than setting out the identification of the property, the parties, and the consideration as, arguably, a nonexclusive list, the Brotman panel, citing Dassance, stated unequivocally that “[t]he material terms of the contract which must be clearly established are the identification of the property, the parties, and the consideration.” Id. at 726-727 (emphasis supplied). As noted above, this statement was carried forward in Kojaian, supra at 731, albeit in a statute of frauds context.
*287 Thus, until recently, there was arguably a divergence between some of the older cases of the Michigan Supreme Court, such as Brin, Milner Hotels, and Rathbun in which the Court referred to provisions relating to “terms,” “time of performance,” “marketable title,” the “amount and time” of installment payments, the “rate of interest,” and the “adjustment of taxes and assessments” as material or essential terms of a contract for the sale of land, and decisions of this Court, such as Brotman and Kojaian, that, ultimately, delineated only the identification of the property, the parties, and the consideration as material or essential terms.
In our view, this possible divergence was resolved in Giannetti v Cornillie, 447 Mich 998; 525 NW2d 459 (1994) (Giannetti II), adopting the dissent of then Judge Taylor in Giannetti v Cornillie, 204 Mich App 234, 239-241; 514 NW2d 221 (1994) (Giannetti I). As described by Judge Taylor, Giannetti I, a case where the trial court granted specific performance to the plaintiffs (buyers),[12] involved a situation in which the plaintiffs offered $155,000 for a house owned by the estate of the mother of the defendants (sellers, who were the copersonal representatives of their mother’s estate), indicating that $124,000 of that sum (eighty percent of the purchase price of $155,000) was to be secured by a mortgage. Id. at 239. The defendants made a counteroffer of $160,000 and left the $124,000 mortgage amount unchanged. Id. The plaintiffs signed the counteroffer but changed the amount of the price to be mortgaged to $128,000 (eighty percent of the new purchase price of $160,000). Id. According to *288 Judge Taylor, the trial court found that the plaintiffs “conducted themselves in such a fashion as to indicate by their actions that the change was not a material term of the contract.” Id.
The plaintiffs argued that the modification of the mortgage amount did not vitiate their purported acceptance “because the mortgage amount, unlike the purchase price, was not a material term of the contract.” Id. at 237. The majority of the Giannetti I panel in this Court disagreed, holding that the modification to the mortgage amount was material and therefore the plaintiffs’ purported acceptance was only a counteroffer. Id. at 238. The majority reasoned that
[i]n other words, before the change, plaintiffs were obligated to buy the property if they obtained a mortgage for $124,000; after the change, no obligation to buy arose unless they obtained a $128,000 mortgage. Thus, the modification had the legal effect of widening the door through which plaintiffs could escape the contract and it was therefore material. See Anderson v Donato, 224 Mich 216, 218; 193 NW 805 (1923) (“It is only by determining the legal effect of the instrument before the alteration and after the alteration that it is possible to decide whether the change is material or not.”). Because the modification was not initialed by defendants, the contract was void under the statute of frauds. MCL 566.106; MSA 26.906. [Giannetti I, supra at 238.]
We first note that it is not possible from the text of the majority’s decision in Giannetti to determine whether the defendants interposed the statute of frauds as a defense. If we assume that there was such a defense, then the majority’s reference to the statute of frauds in the last sentence quoted above is understandable. If there was no such defense, the majority *289 was following the tradition of conflating the issues of the form of a contract for the sale of land as dictated by the statute of frauds with the substance of such a contract as required by general contract law principles.
More directly, however, we note that the majority in Giannetti I did not refer at all to the Michigan Supreme Court and Court of Appeals cases, cited above, that deal with the issue of the material or essential terms of a contract for the sale of land. Rather, the majority assumed that the modification to the mortgage amount, by “widening the door through which plaintiffs could escape,” was a modification of a material term. Id. Judge Taylor was quick to pick up on this point. Citing Brotman, he flatly stated, “It is well-established contract law that the material elements of a real estate contract are the identity of the property, the parties, and the consideration.” Id. at 239-240. With this single sentence, Judge Taylor established that, in his view, the materiality of a term in a contract for the sale of land was a matter of contract law and that, following Brotman, the material terms of such a contract were the identification of the property, the parties, and the consideration.
Citing MCL 566.106; MSA 26.906 and McFadden v Imus, 192 Mich App 629, 633; 481 NW2d 812 (1992), Judge Taylor determined that the requirements of the statute of frauds had been met, thereby disagreeing with the majority on that point as well. Judge Taylor then went on to note that in determining whether there was a material change in the contract terms to the extent that no meeting of the minds occurred, the “majority treats the materiality question as if it were a question of law rather than a question of fact.” Gian *290 netti I, supra at 240. Judge Taylor then referred to the trial court’s factual findings as representing “a fair interpretation of the evidence presented at trial,” id. at 241; the trial court’s findings included a conclusion that the defendants’ actions evidenced their belief regarding a meeting of the minds. In this regard, we believe it vitally important to keep in mind that Giannetti was an equitable action for specific performance in which the trial court was the trier of fact. Judge Taylor’s reference to the materiality question as being one of fact must, therefore, be read within this context and cannot be read as an assertion that, somehow, in an equitable action a jury is to determine factual questions regarding materiality.
In Giannetti II, supra at 998, the Michigan Supreme Court reversed the majority decision of the Giannetti I panel of this Court. The Court’s exact words were:
In lieu of granting leave to appeal, the judgment of the Court of Appeals is reversed, the judgment of the Macomb Circuit Court is reinstated for the reasons stated by the dissenting judge in the Court of Appeals, and the case is remanded to the Court of Appeals for consideration of the issue of damages raised by plaintiffs’ cross appeal. [Emphasis supplied.]
We read the emphasized portion of the Court’s order as adopting Judge Taylor’s reasoning as the Court’s own and therefore we regard the language incorporating that reasoning as - binding precedent. Thus, the state of the law in Michigan at this time with respect to the material or essential provisions of a binding contract for the sale of land is that such provisions are a matter of contract law and that the material *291 provisions are the identification of (1) the property, (2) the parties, and (3) the consideration.
C. CONTRACTS FOR THE SALE OF LAND AND “LAND CONTRACTS”
We also note that there is possibility for confusion between a contract for the sale of land and a “land contract.” A contract for the sale of land is, quite simply, a purchase agreement such as the one at issue in this matter. The term “land contract” is commonly used in Michigan as particularly referring to “agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer.” 1 Cameron, Michigan Real Property Law (2d ed), § 16.1, p 582. A land contract is therefore an executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract. While in modem practice purchase agreements and land contracts are often not the same document, in earlier times they often were. See, e.g., Miller, supra at 525, where there was only one agreement, which apparently served as both the purchase agreement between the parties and a land contract. The interchangability of these two types of agreements in earlier practice perhaps explains why the amount and time of installment payments and the rate of interest were listed as material terms of contracts for the sale of land because, in fact, such terms were (and are) essential elements of a land contract.
*292 IV. THE PURCHASE AGREEMENT
A. INTRODUCTION
Given the state of the record, it is perhaps appropriate for us to indicate what this case is not about. First, this case is not an appeal from the trial court’s denial of the Zurchers’ motion for a directed verdict.[13] Rather, the Zurchers are appealing the trial court’s denial of their motion for summary disposition. Thus, although we have relied above to some extent on the testimony at trial to set out the facts in an intelligible manner, we must decide this case on the basis of the evidence properly before the trial court at the time of the motions for summary disposition. See Maiden v Rozwood, 461 Mich 109, 121; ._. NW2d _ (1999) (in deciding a motion for summary disposition under MCR 2.116(C)(10), a trial court should consider the documentary evidence submitted by the parties).
Second, this case, at its heart, is not a statute of frauds case. We note that in her brief in opposition to the Zurchers’ motion for summary disposition, Herveat argued that an inaccurate description of the property, as well as the absence of a specific closing date, in the purchase agreement rendered it unenforceable under the statute of frauds. However, on appeal Herveat nowhere squarely argues the statute of frauds as a defense to the enforceability of the purchase agreement.[14] Indeed, in her answer below, *293 Herveat did not raise the statute of frauds in her statement of affirmative defenses. While, as noted above, this Court has on occasion conflated an analysis under the statute of frauds with an analysis under general contract law principles, we believe that for purposes of analytical clarify this case must be regarded as being for specific performance with the basic, and interrelated, questions being: (1) whether the purchase agreement, as a contract for the sale of land, contained the requisite material provisions relating to the identification of (a) the property, (b) the parties, and (c) the consideration; and (2) whether the changes made by Herveat to the terms of the purchase agreement converted her acceptance into a counteroffer. With respect to the first question, given that the issue regarding what terms constitute material terms of a contract for the sale of land is discussed in statute of frauds cases as often as in straight contract law cases, we will, while identifying them appropriately, on occasion in our ensuing discussion refer to statute of frauds cases as well as contract law cases.
B. THE MATERIAL TERMS OF THE PURCHASE AGREEMENT
(1) THE PROPERTY
There is no dispute that the legal description of the property contained in the purchase agreement was partially incorrect. Herveat appears to argue that these defects in the purchase agreement rendered it unenforceable. We disagree. In a contract for the sale of land, there is no question that the property must be sufficiently described. Here, the purchase agreement listed the wrong county. However, the purchase *294 agreement correctly identified the property as being in “Torch Lake Township” and on “Rabbit Bay.”
In Stanton v Dachille, 186 Mich App 247; 463 NW2d 479 (1990), a case involving the statute of frauds as well as other issues, this Court held that
“[a] description is sufficient if when read in the light of the circumstances of possession, ownership, situation of the parties, and their relation to each other and to the property, as they were when negotiations took place and the writing was made, it identifies the property.” [Id. at 259, quoting Wozniak v Kuszinski, 352 Mich 431, 436; 90 NW2d 456 (1958) (citations omitted).]
Accordingly, we conclude that, as a matter of law, the partially inaccurate legal description, in light of the circumstances of possession, ownership, situation of the parties, and their relation to each other and to the property as they were when negotiations took place and the writing was made, did not make the purchase agreement unenforceable. Thus, we find that the contractual law requirement that the property be identified was satisfied.
(2) THE PARTIES
There is no question but that the purchase agreement identified the parties. Thus, we find that the contractual law requirement that the parties be identified was satisfied.
(3) CONSIDERATION
Similarly, there is no question that the purchase agreement identified the purchase price as being $59,900. Thus, we find that the contractual law requirement that the consideration be identified was *295 satisfied. If the only question before us was whether the purchase agreement contained the material terms of a contract for the sale of land set out by Judge Taylor in Giannetti I, supra at 239-241, and adopted by the Michigan Supreme Court in Giannetti II, supra at 998 (i.e., the identification of the property, the parties, and the consideration), then this case would be over and we would simply rule that the trial court erred in denying the Zurchers’ motion for summary disposition. However, Herveat’s basic challenge to the binding effect of the purchase agreement, in the final analysis, rests primarily and most logically on the issue whether her changes to the purchase agreement converted her acceptance of the Zurchers’ offer into a counteroffer.
C. OTHER TERMS OF THE PURCHASE AGREEMENT
(1) CLOSING DATE
Herveat first appears to argue that the absence of a closing date makes the purchase agreement unenforceable. In Kojaian, supra at 731, which is, of course, a statute of frauds case, this Court held that “[w]hen other terms, such as the time for performance or payment, are missing, courts will presume reasonable terms unless the parties express a contrary intention.”
Here, the parties did not indicate that they expected anything other than a reasonable closing date. Therefore, the trial court should have presumed that the closing would have occurred within a reasonable time after the purchase agreement was signed. We find that the absence of a closing date on the purchase agreement did not render it unenforceable.
*296 (2) HERVEAT’S CHANGES TO THE PURCHASE AGREEMENT
As noted above, after the Zurchers signed the purchase agreement and sent it to Herveat, Herveat made changes before signing and returning it. It is here that Herveat’s arguments have the most cogency. Specifically, Herveat indicated that she wanted to keep a lawn mower and some ceramic vases located on the property and that she wanted the Zurchers to pay the costs and fees associated with the sale, with the exception of the proration of 1995 taxes and the cost of preparation of the deed. As did the sellers in Giannetti, Herveat argues that these alterations changed the offer into a counteroffer that was not subsequently accepted in writing by the buyers.
For a response to an offer to be deemed an acceptance as opposed to a counteroffer, the material terms of the agreement cannot be altered. We note that Herveat’s addition of these terms did not change the Zurchers’ obligation to buy the property and, therefore, under Giannetti II, supra at 998, it can certainly be argued that the material terms of the contract were not altered.[15] Additionally, we note that there was no indication that the Zurchers objected to the additional terms added by Herveat, and they continued to proceed with the purchase agreement after Herveat added these terms. Further, we note that in *297 signing the purchase agreement and in the time before Herveat’s “change of heart,” the parties “conducted themselves in such a fashion as to indicate by their actions that the change was not a material term of the contract.” Giannetti I, supra at 239 (Taylor, J., dissenting). Perhaps most importantly of all, the document Herveat signed was clearly labeled as a binding contract and Herveat’s signature dated August 16, 1995, was below a caption entitled “owner’s ACCEPTANCE.”
Nevertheless, Herveat’s changes arguably affected a material term: the consideration to which the parties agreed. In our view, to convert Herveat’s changes from an acceptance to a counteroffer, her changes must be more than de minimus; in other words, to change an acceptance into a counteroffer, the changes to a material term must themselves be material. See id. (treating nonmaterial change in acceptance as not constituting the making of a counteroffer). We are, at this juncture, presented with a procedural problem that we cannot resolve on the basis of the record before us. The following language from Anzaldua v Band, 457 Mich 530; 578 NW2d 306 (1998), indicates that specific performance is an equitable remedy and that, absent consent of the parties to a jury trial, a claim for specific performance alone is to be decided by a trial court without a jury:
“The parties have a constitutional right in Michigan to have equity claims heard by a judge sitting as a chancellor in equity. If a plaintiff seeks only equitable relief, he has no right to a trial by jury. However, in this case, the plaintiff sought both equitable relief in the form of specific performance and legal relief in the form of damages. In this situation the plaintiff had a right to have a jury hear his damage claim.” [Id. at 538, n 6, quoting Dutka v Sinai Hosp of *298 Detroit, 143 Mich App 170, 173; 371 NW2d 901 (1985) (citations and emphasis omitted).]
Here, the Zurchers also sought both equitable relief in the form of specific performance and legal relief in the form of damages. This fact did not, however, deprive them of their right to a ruling by the trial court regarding their request for specific performance. The trial court did not make any factual findings on the interrelated issues of the material terms of the purchase agreement and if changes to those material terms were sufficient to convert Herveat’s acceptance into a counteroffer but, rather, allowed the question whether there was a binding contract for the sale of land to go to the jury. This was clearly error. We therefore do not have before us findings of fact[16] from the appropriate finder of fact—the trial court—regarding the crucial question whether Herveat’s additions to the purchase agreement, which had the effect of removing the lawn mower and ceramic vases from the personal property to be conveyed and of imposing the obligation for the payment of all fees and costs (except for the proration of the 1995 property taxes and preparation of the deed) on the Zurchers, were of the magnitude and materiality to convert Herveat’s acceptance into a counteroffer.
*299 D. RESCISSION OF THE PURCHASE AGREEMENT
Herveat also argues there was a factual dispute regarding whether Diane Zurcher told Herveat that Herveat could back out of the agreement at any time and that this precluded summary disposition. However, even if Herveat was correct in alleging that she was repeatedly told she could back out of the purchase agreement, this would not have invalidated the contract. As stated by Judge O’Connell for the panel in Zurich Ins Co v CCR & Co (On Rehearing), 226 Mich App 599, 604; 576 NW2d 392 (1997): “It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms.” There was nothing in the purchase agreement indicating that either party could rescind it at will. Thus, Herveat’s subjective thoughts about the enforceability of the purchase agreement are irrelevant to whether it was indeed enforceable.
There was an additional factual dispute regarding whether Diane Zurcher told Herveat in a telephone call that she, Zurcher, would rescind the purchase agreement. Even assuming that Diane Zurcher made the statement in question, such a statement would not have voided the purchase agreement. Herveat made no claim that James Zurcher released her from the purchase agreement. Further, the alleged release by Diane Zurcher was verbal and therefore not legally meaningful. Because the purchase agreement was required to be in writing under the statute of frauds, any modification or surrender of the purchase agreement also had to be in writing or supported by con *300 sideration[17] in order to be enforceable. Schultz v Silver, 323 Mich 454, 460; 35 NW2d 383 (1949) (an attempted parol modification of a land contract, which land contract was required to be in writing under the statute of frauds, was void with regard to all parties); Barth v Women’s City Club, 254 Mich 270, 273; 236 NW 778 (1931) (surrender of a lease for a term of five years, which lease was required to be in writing under the statute of frauds, when the unexpired term was more than a year “must also be in writing, must be of equal dignity”); Minor-Dietiker v Mary Jane Stores of Michigan, Inc, 2 Mich App 585, 590; 141 NW2d 342 (1966) (consideration distinct from the underlying contract can suffice to make an oral modification of a lease enforceable).
V. REMEDY
We are therefore faced with the question of the proper remedy. In Foshee v Krum, 332 Mich 636, 643; 52 NW2d 358 (1952), the Michigan Supreme Court stated:
It is conceded that the power to grant specific performance rests within the sound discretion of the court. The court, however, is not justified in withholding a decree for specific performance merely because of the exigencies of a case. Tiley v Chapman, 320 Mich 173 [30 NW2d 824 (1948)]. In Hager v Rey, 209 Mich 194 [176 NW 443 (1920)], we stated the rule that specific performance of a contract for the purchase of real estate may not be arbitrarily refused, but in the exercise of sound legal discretion should be granted, in the absence of some showing that to do so would be inequitable.
*301 In this case, the trial court erroneously allowed the question whether there was a binding contract for the sale of land to go to the jury. Thus, the trial court never exercised its discretion regarding whether to order specific performance of the contract (if a contract existed). Accordingly, we conclude that this case should be remanded to the trial court for it (1) to make a factual finding regarding whether Herveat’s changes to the purchase agreement constituted a change to a material term of the contract (i.e., consideration) and, if so, (2) to make a factual finding regarding whether these changes were of the magnitude and materiality to convert Herveat’s acceptance into a counteroffer. In this regard, if any party wishes to make a record, through testimony or otherwise, regarding these factual questions, the trial court shall permit this.
If the trial court, after due consideration of that record and of our discussion above of the germane legal principles, finds that Herveat’s changes were not to a material term of the contract or that such changes were not of the magnitude and materiality to convert Herveat’s acceptance into a counteroffer, then the trial court should clearly enter a decree for specific performance of the appropriate terms and conditions. If, however, the trial court finds that Herveat’s changes were to a material term of the contract and that such changes were of the magnitude and materiality to convert Herveat’s acceptance into a counteroffer, then the trial court should decline to enter such a decree. In either event, this Court will then, if either or both parties choose again to appeal, be in the exact situation as was the Court in Giannetti: we will have before us the findings of the trial *302 court—the appropriate trier of fact in an equitable action for specific performance—with regard to the critical issues in the case.
Given our disposition of the case, we need not address the Zurchers’ additional issues regarding the trial court’s grant of a protective order and its issuance of mediation sanctions. We briefly note, however, that because the relief sought by the Zurchers was not primarily money damages or division of property, this case should not have been submitted to mediation. See MCR 2.403(A)(1) and Ingle v Musgrave, 159 Mich App 356, 365; 406 NW2d 492 (1987).
VI. THE DISSENT
Our dissenting colleague, post at 308, states that the “parties consented to a jury trial” and, relying on McPeak v McPeak, 457 Mich 311; 577 NW2d 670 (1998), concludes that the “jury was an appropriate factfinder in this case.” Post at 309. While we concede that the record is less than fully illuminating on this point, we respectfully suggest that there is no basis whatsoever—on the record or otherwise—for the position that the Zurchers “consented” to a jury trial of their equitable claims for specific performance. Therefore, McPeak does not control and a remand for fact finding by the trial court with regard to their equitable claims is appropriate.
It is clear that the Zurchers included a jury demand with their complaint and deposited a jury demand fee.[18] It is also clear, however, that the Zurchers’ com *303 plaint included two equitable counts. Under such circumstances, the filing of the jury demand, standing by itself, certainly is not conclusive evidence that the Zurchers “consented” to a jury trial on their equitable claims for specific performance.[19]
Our conclusion in this regard is buttressed by our review of the record as it was subsequently developed. In their motion for summary disposition, the Zurchers moved that the purchase agreement “be specifically enforced, as there is no genuine issue of material fact, pursuant to MCR 2.116(C)(10).” Herveat’s brief in opposition to the Zurchers’ motion (and in support of her own countermotion) concluded by stating, “In such a context, a Court of Equity must hold that the equitable relief of specific performance is not appropriate to the facts and circumstances of this case.” Thus, it was clear that both parties approached the hearing on their motions for summary disposition as one in which the Zurchers’ equitable claims would be considered, if not decided, by the trial court.[20]
The trial court, as noted above, determined that there were questions of fact that had to be resolved and denied both motions. The trial court then turned *304 to—but ultimately avoided—the all-important question of who would decide the questions of fact with respect to the Zurchers’ equitable claims:
So I’m going to proceed with the pretrial. Mr. Marks [plaintiffs’ attorney] has a jury demand in his complaint for breach of contract, and perhaps we can start with what is going to be tried to the jury, and what are questions of equity that the jury will—insofar as your complaint is concerned, Mr. Marks. You do have a jury demand?
Mr. Marks: Yes, Your Honor.
The Court: Should we take that up now at this pretrial conference, or set a subsequent pretrial conference? Is there further discovery to be done?
Mr. Marks: We wanted to take the deposition of Barbara Langdon and there may be some others, but we’re pretty much ready for trial, your Honor.
The Court: Okay.
The Court: Well there could be factual questions] whether there ever was a contract, because whether—Mr. Makinen [defendant’s attorney] has raised the issues of acceptance and what is the contract. If in fact there was a contract, what is that contract? So they are all contract issues here, all questions of fact for a jury, insofar as the contract issues are concerned. However, you do have some equitable requests for relief, do you not, in your complaint?
Mr. Marks: Yes, Your Honor.

The Court: That would not be heard by the jury.

Mr. Marks: Correct. I would say two days to try this case, Your Honorl[21]
*305 * * *
The Court: I’m going—Following the mediation and the period for acceptance or rejection I’m going to set a final pretrial. We’re going to go over these issues at that pretrial as to the purpose in the—what the jury would be deciding in this matter and what would be the equitable issues, and what the Court would be deciding and things of that nature at that final pretrial. [Emphasis supplied.]
Thus, the trial court, having determined that factual issues existed that precluded summary disposition, apparently recognized that there were certain equitable issues that should be tried to the court and certain monetary issues relating to damages for the alleged breach of contract that should be tried to the jury. We are unable to find any later determination on the record by the trial court[22] concerning which issues were to be tried to the court and which issues were to be tried to the jury; the upshot was that all issues in the case were tried to the jury. It is clear, *306 however, from the foregoing exchanges on the record that the Zurchers did not consent to the trial of their equitable claims to the jury.[23] Certainly, the Zurchers’ steadfast position on appeal has been that the issue whether there was a binding contract should never have been submitted to the jury.[24] If there was no *307 consent by the Zurchers for a trial of the equitable claims to the jury, McPeak does not apply and the jury was not the appropriate factfinder, our dissenting colleague’s conclusion to the contrary notwithstanding.
m CONCLUSION
Reversed and remanded for further appropriate proceedings consistent with this opinion. In order to expedite the matter, we retain jurisdiction.
Reversed and remanded.
Markman, J., concurred.

 The Zurchers also claim error by the trial court in granting Herveat’s motion for a protective order and in granting mediation sanctions.

 Specifically, the Zurchers ask for a finding that “there was a legally binding contract which entitles the Plaintiffs to specific performance, and that upon the payment of $59,900.00 the Plaintiffs shall be entitled to the Deed to RB 96 Rabbit Bay.”

 Opdyke Investment Co v Norris Grain Co, 413 Mich 354, 364-365; 320 NW2d 836 (1982), contains a succinct summary of this history of the statute of frauds:
The Statute of Frauds has epjoyed a position of prominence in Anglo-American jurisprudence for three centuries and has proven durably resistant to continuing scholarly criticism. The statute remains firmly entrenched in our law despite its repeal in England, the jurisdiction of its birth, in 1956. Forty-nine states retain the statute. Louisiana, with its French civil-law heritage, is the exception. Even the modem Uniform Commercial Code includes a modified statute of frauds. UCC 2-201; MCL 440.2201; MSA 19.2201.
While the form of the statute has remained essentially unchanged over the centuries, judicial interpretation has undergone considerable evolution. The doctrine of “part performance” satisfying the statute is as old as the statute itself; estoppel and promissory estoppel have developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the rule. It has been suggested that if the statute lacked such equitable “loopholes,” the outcry would soon be such that amendments would be passed in short order.

 See, e.g., Cooper v Pierson, 212 Mich 657, 660; 180 NW 351 (1920), citing Rosenbaum v Tyszka, 192 Mich 457; 158 NW 848 (1916), to the effect that a memorandum to be sufficient under the statute of frauds
must be certain and definite as to the parties, property, consideration, premises, and time of performance.
See also Marina Bay Condominiums, Inc v Schlegel, 167 Mich App 602, 606; 423 NW2d 284 (1988), and McFadden v Imus, 192 Mich App 629, 633; 481 NW2d 812 (1992).

5 See also Forge v Smith, 458 Mich 198, 206; 580 NW2d 876 (1998) (“Rather than apply fixed rules for compliance with the statute of frauds, this Court has adopted a case-by-case approach.”).

 See, e.g., Gedvick v Hill, 333 Mich 689, 695; 53 NW2d 583 (1952), quoting Cooper, n 4 supra at 660, to the effect that
“[i]t has been held by this Court that a memorandum, to be sufficient under the section [of the statute of frauds] involved, . . . must be complete in itself, and leave nothing to rest in parol. Gault v Stormont, 51 Mich 636 [17 NW 214 (1883)].”

 See, e.g., Opdyke Investment Co, n 3 supra at 367, stating:
Certainly nothing in the language of the statute requires adherence to the strict “nothing in parol” rule suggested in Gedvick, supra. The statute does not require the entire contract to be written; a “note or memorandum” of the full contract will suffice. See Kerner v Hughes Tool Co, 56 Cal App 3d 924; 128 Cal Rptr 839 (1976). Perhaps the “nothing in parol” notion resulted from combining the statute of frauds with the so-called “parol evidence rule,” or rule against contradicting integrated writings. See NAG Enterprises, Inc v All State Industries, Inc, 407 Mich 407; 285 NW2d 770 (1979), reh den 407 Mich 1164 (1980); Union Oil Co of California v Newton, 397 Mich 486; 245 NW2d 11 (1976). In any event, the *279 “nothing in parol” approach to the statute of frauds has been so dishonored in this Court that it has lost any claim to legitimacy.

 Cooper cited what appears to be a statute of frauds case for this proposition, Rosenbaum, n 4 supra. However, Rosenbaum, at 458, cites Brin v Michalski, 188 Mich 400; 154 NW 110 (1915), a non-statute of frauds case. Brin, at 406, upheld the contract in question under general contract principles, stating:

 This rather reasonable explanation of the conflation between form and substance did not preclude a later Michigan Supreme Court from rather directly criticizing the reasoning in Gedvick. In Opdyke Investment Co, n 3 supra at 366, the Court stated:
The specific holding in Gedvick, however, was that an agreement to sell property was, in fact, never reached; the written application for approval to sell property was not intended to be a contract. As noted in Randazzo v Kroenke, 373 Mich 61, 70; 127 NW2d 880 (1964), the Gedvick Court then “gratuitously added,” in dictum, that the application would not have satisfied the statute of frauds even if an agreement had been reached.

10 Kojaian referred to MCL 566.108; MSA 26.908 as the statute of frauds. Kojaian, supra at 730.

 Several states have similarly defined the essential terms of a contract for the sale of real property, although with some minor variation. In Colorado, for instance, a “contract must contain the essentials—parties, terms, subjectmatter, and consideration . . . .” Shull v Sexton, 154 Colo 311, 316; 390 P2d 313 (1964). Missouri requires the inclusion of “1) the parties; 2) the subject matter; 3) the promise on both sides; 4) the price; and 5) the consideration.” Kemp Const Co v Landmark Bancshares Corp, 784 SW2d 306, 308 (Mo App, 1990). Under Mont Code Ann 28-2-102, the essential elements of a contract in Montana are the parties, the consent of the parties, a lawful object, and sufficient consideration. Wiberg v 17 Bar, Inc, 241 Mont 490, 497; 788 P2d 292 (1990). In Nebraska, a valid contract requires “sufficient certainty and definiteness as to the parties, property, consideration, terms, and time of performance.” Satellite Development Co v Bernt, 229 Neb 778, 781; 429 NW2d 334 (1988). Oregon requires “the designation of the parties, a description or adequate identification of the property to be sold, the promise to sell and to buy, the purchase price and how it shall be payable, and a fixed time and place for the delivery of the deed . . . .” Ochs v Albin, 137 Or App 213, 218; 903 P2d 906 (1995). For land sale contracts in Idaho, the “minimum requirements” are the parties, subject matter, price or consideration, description of the property, and other essential terms of the agreement. Lawrence v Jones, 124 Idaho 748, 751; 864 P2d 194 (Idaho App, 1993). In South Dakota, the essential terms are the identification of the parties, description of the property, the price, and the method of payment. Rusch v Kauker, 479 NW2d 496, 500 (SD, 1991). Section 96-101 of the Georgia Code of 1933 states that “[tjhree elements are essential to a contract of sale: 1. An identification of the thing sold. 2. An agreement as to the price to be paid. 3. Consent of the parties.” Sturdivant v Walker, 202 Ga 585, 585; 43 SE2d 527 (1947). Illinois has stated:
A contract for the sale of real estate cannot be specifically enforced by a court unless the writing contains the essential contract terms, including (1) the names of the vendor and vendee; (2) a description of the party [sic, property]; (3) the sales price, or a means of determining it, and the terms and conditions of sale; and (4) the signature of the party to be charged. Kane v McDermott, 191 Ill App 3d 212, 217; 547 NE2d 708 (1989).
*284 Oregon appears to be one of the foremost jurisdictions on this topic in terms of the number of published cases that deal with the requirements of a land sale contract. In Comment, Perfecting Oregon’s land sale contract: beyond notice and cure, 76 Or L R 945, 965 (1997), Gregory R. Henrikson summarizes the law on specific performance and essential terms in Oregon. He writes:
Specific performance, like strict foreclosure, is an equitable remedy available whether or not provided for in the contract. However, it is far from being a living fossil. Unlike strict foreclosure, specific performance is the standard remedy for breach of real estate sale contracts, because real property’s uniqueness makes monetary or “legal” damages an inadequate substitute for the property itself. Under land sale contracts in Oregon, just as with real estate sale contracts, the vendor seeking specific performance must show that he is ready, willing, and able to complete the transfer of the property. The contract must also be “definite in all material respects, with nothing left for future negotiation.” Essential terms for any contract to sell land are the names of parties, the subject matter, mutual promises, and price and terms. [Id.]
The State of Washington also specifically defines the essential terms of a contract for the sale of real property. However, Washington has a much higher standard for determining the validity of a contract. In Kruse v Hemp, 121 Wash 2d 715, 722; 853 P2d 1373 (1993) (citing Hubbell v Ward, 40 Wash 2d 779, 782-783; 246 P2d 468 [1952]), the Washington Supreme Court followed a prior decision setting out the
13 material terms of a real estate contract: (a) time and manner for transferring title; (b) procedure for declaring forfeiture; (c) allocation of risk with respect to damage or destruction; (d) insurance provisions; (e) responsibility for: (i) taxes, (ii) repairs, and (in) water and utilities; (f) restrictions, if any, on: (i) capital improvements, (ii) liens, (iii) removal or replacement of personal property, and (iv) types of use; (g) time and place for monthly payments; and (h) indemnification provisions.
Many other states require certain essential terms for a valid contract, but either do not define those terms or set them out in relation to the requirements of the statute of frauds.

 The plaintiffs cross appealed for damages.

 Herveat, somewhat inexplicably, states, “The issue before this court is whether the trial court properly denied Plaintiffs [sic] request for a directed verdict.”

 In fairness, Herveat does come close to making such an argument. Referring to the issues that were present at trial, Herveat states, “This claim presented a question concerning the parol evidence rule and Statute of Frauds.” However, while citing cases in her brief relating to the statute of frauds, Herveat nowhere directly asserts the statute as a defense.

 This argument is reinforced by Kojaian, supra at 731, a statute of frauds case, in which the Court indicated that “the material terms which must be established before an agreement becomes enforceable are generally the identification of the parties, the property, and the consideration,” (emphasis supplied), implying that the disposition of the contents of the home and the payment of fees associated with the sale are not material terms, and in Brotman, supra at 726-727, where the Brotman panel, citing Dassance, stated unequivocally that “[t]he material terms of the contract which must be clearly established are the identification of the property, the parties, and the consideration.” (Emphasis supplied.)

 Again, we recognize that this case went to trial before a jury. As stated above, this was clearly error. The trial court, not the jury, was the proper trier of fact with regard to the equitable claim for specific performance. We, therefore, cannot resolve the factual issues on the basis of the record made before the jury but can only rely on the record as it existed at the time of the Zurchers’ motion for summary disposition.

 There was no consideration for the alleged release.

 In their reply brief to this Court, the Zurchers state, “Although the Plaintiffs did ask for minimal monetary damages in their complaint, this claim was secondary and it was well known throughout this entire proceeding that the Plaintiffs were seeking the right to have specific perform *303 anee with regard to the purchase of RB 96 Rabbit Bay.” While we regard this statement as according with common sense, it does not serve to vitiate the fact that the Zurchers did file a jury demand.

 Indeed, we note that in their notice of lis pendens, filed concurrently with their complaint, the Zurchers described their cause of action as a “suit in specific performance of a contract.”

 This conclusion is supported by the statements of both counsel at the hearing on the motions for summary disposition. The Zurchers’ counsel stated, “Simply, we’re asking the Court to enforce this contract.” Herveat’s counsel stated, “And that’s essentially what the Court is being asked, as a Court of equity, to rule as a matter of law that you’re going to say she’s got to convey her local retirement home.”

21 Our dissenting colleague cites McPeak, supra at 315-316, as “controlling.” There, the Supreme Court stated, “Nothing in the record indicates that the trial court or any of the parties at any time questioned the appropriateness of a jury trial.” Id. at 313. In light of the above-quoted colloquy between the trial court and the Zurchers’ counsel, we find it difficult, indeed impossible, to conclude that no one in this case questioned the “appropriateness” of a jury trial of the equitable issues. Our dissenting col *305 league also cites People v Fetterley, 229 Mich App 511, 520; 583 NW2d 199 (1998), a criminal case, for the proposition that a plaintiff may not harbor error as an appellate parachute. Certainly this is so. However, in Fetterley, as this Court noted, counsel “expressly acquiesced to the court’s handling of the jury’s request.” Id. at 520. Again, in light of above-quoted colloquy between the trial court and the Zurchers’ counsel, we find it impossible to conclude that counsel here expressly “acquiesced” to a jury trial of the equitable issues.

 The trial court issued an order and notice of supplemental pretrial conference on May 2, 1997; among the issues to be addressed was the “date of the final pretrial conference.” However, the summary of supplemental pretrial conference and pretrial order issued by the trial court makes no mention of a final pretrial conference, nor any mention of which portions of the case were to be tried to the trial court and which were to be tried to the jury. The docket supplied by the trial court contains no reference to a final pretrial conference, nor does it contain any pretrial determination, by the trial court regarding the issues to be tried to the trial court and the issues to be tried to the jury. Similarly, the transcript of the trial itself contains no such determination, and it is clear that the entire case was tried to the jury.

 Fascinatingly, Herveat appeared, in her posttrial pleadings, to recognize that the Zurchers’ equitable claims should have been tried to the trial court. In her motion for entry of judgment, Herveat stated, “[T]his matter was tried to a Jury for damages and to the Court for specific performance of an alleged contract and the Jury having found that no contract exists, Defendant is entitled to entry of the Judgment on no cause for action on the Complaint as a whole.” (Emphasis supplied.). Further, in her proposed judgment, which was ultimately adopted by the trial court, Herveat stated, “This matter having come before the Court on the trial of issues at law to a jury and, issues in equity to the Court and, the jury having rendered its verdict finding no contract between the parties . . . .” (Emphasis supplied.). We view these statements, while perhaps well-intentioned, as not being in accordance with the procedural history of this matter as we have set it forth above. Simply put, the equitable issues were presented to the trial court but not tried by it.

 The Zurchers’ brief on appeal states:
Summary disposition should have been granted, and the issue as to whether or not there was a binding contract should never have been submitted to a Jury. This was a question of law, not fact. The Plaintiffs should be entitled to specific performance, as all land is unique, and they had no remedy at law.
The Zurchers’ reply brief states:
The Defendant points to facts that came out at the jury trial. It is the Plaintiffs (sic) argument that there never should have been a jury trial, and that the Trial Court Judge had all of the proper information needed when he did not grant the Plaintiffs (sic) Motion for Summary Disposition with regard to specific performance. Additionally, although the Plaintiffs did ask for a jury trial in their complaint, they did this to reserve there (sic) right to such provided that the case could not be disposed of through a pre-trial motion. It was the Plaintiffs (sic) position all along that this matter would be determined by the Judge, as a matter of law and that it should not go to a jury trial. The Plaintiffs do not feel they should be penalized just for reserving the right to a jury trial in their complaint, as this fact should have had no impact on the Trial Judge’s Pre-Trial decision whether or not to grant [the] Motion for Summary Disposition with regard to specific performance. [Emphasis in the original.]
*307 We note, while we agree that the Zurchers’ equitable claims should not have been tried to the jury, we do not agree that the trial court was obligated at the time it considered the motions for summary disposition to determine these claims on the basis of plaintiffs’ interpretation of the law. Rather, as in Giannetti, this case involved equitable claims for specific performance. With respect to such claims, the trial court was the trier of fact. The trial court’s error was not in its decision to deny summary disposition on the basis that there were disputed matters of material fact. Rather, the trial court’s error was in failing—so far as we are able to determine from the record—subsequently to make factual findings regarding the Zurchers’ equitable claims, thereby allowing those claims to go to a jury for a determination.